## Commonwealth ex rel. Margiotti, *v.* Ortwein et al., Appellants.

Argued May 2, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and RHODES, JJ.

*Julius M. Rapoport*, with him *Wickersham & Wickersham*, for appellant, No. 29.

*Robert P. F. Maxwell*, with him *George F. Blewett*, for appellant, No. 44.

*Harry Polikoff*, Deputy Attorney General, with him *Charles J. Margiotti*, Attorney General and *Charles J. Ware*, Assistant Deputy Attorney General, for appellee.

OPINION BY KELLER, P. J., July 15, 1938:

This was an action of assumpsit brought by the Commonwealth, at the relation of the Attorney General, against a milk dealer and the surety on his bond, furnished under the provisions of the 'Milk Control Board Law' of January 2, 1934, P. L. (Special Sess. 1933-4) 174, to recover the penalty of the bond, for distribution among milk producers, to whom the dealer had made payments for milk sold and delivered to him at prices less than those fixed by the Milk Control Board, to the extent that the total of said under-payments exceeded the penalty of the bond.

The court below, after various proceedings not necessary to be mentioned, on November 8, 1937 entered judgment against the defendants for want of sufficient affidavits of defense for $1,913.84—$1,600, with interest from August 1, 1934 to that date, $313.84. Separate appeals were filed by the defendants.

The statements of questions involved present five matters for consideration, which we will discuss in the following order.

(1) The provision of the Milk Control Board Law of January 2, 1934 requiring dealers applying for licenses to execute and file with the application a bond approved by the board—(section 12)—is constitutional. Chief Justice KEPHART in *Milk Control Board v. Eisenberg Farm Products*, 332 Pa. 34, 200 A. 854, said: "We have held in *Colteryahn Sanitary Dairy v. Milk Control Commission* and *Keystone Dairy Co. v. Milk Control Commission*, 332 Pa. 15, that the Act of January 2, 1934, P. L. 174, and the Acts of April 30, 1935, P. L. 96, and April 28, 1937, P. L. 417 amending and reenacting its provisions, are constitutional. See *Rohrer v. Milk Control Board*, 322 Pa. 257, where it was held that licensing and price-fixing had a direct and substantial relation to sanitation, public health and public welfare. While bonding was not specifically mentioned, it was listed and necessarily included as it was one of the questions in the case." Furthermore, the appellants are not in a position to raise the question in this proceeding. The appellant Ortwein voluntarily applied to the Milk Control Board for dealer's licenses authorizing him to do business as a milk dealer within this Commonwealth (1) for the period ending April 30, 1934, and (2) during the year May 1, 1934 to April 30, 1935, respectively, and with his application filed the bond in suit, duly executed by himself and the surety defendant in the sum of $1,600, conditioned as required by the Act, for

the faithful compliance by the licensee with the provisions of the Milk Control Board Act of January 2, 1934 and for the prompt payment of all amounts due to producers for milk sold by them to such licensee subsequent to the posting of such bond. Having invoked the provisions of the Act relative to obtaining a license and tendered the bond required to be filed with the application and obtained its approval by the board, they are barred from denying liability on the bond on the ground of the unconstitutionality of the provisions of the act requiring such license and bond: *Montgomery County Bar Assn. v. Rinalducci,* 329 Pa. 296, 298, 197 A. 924; *Ashwander v. Tennessee Valley Authority,* 297 U. S. 288, 348; *Electric Co. v. Dow,* 166 U. S. 489; *St. Louis Malleable Casting Co. v. George C. Prendergast Const. Co.,* 260 U. S. 469; *Wall v. Parrot Silver & Copper Co.,* 244 U. S. 407, 411, 412; *Great Falls Mfg. Co. v. Attorney General,* 124 U. S. 581, 598, 599.

(2) The bond was not affected by the fact that before final judgment could be obtained in the action upon it, both the Act of January 2, 1934, supra, and the Act of April 30, 1935, P. L. 96, which amended and reenacted it, expired by limitation contained in section 26, and were repealed by the Act of April 28, 1937, P. L. 417.

The Act of January 2, 1934 took effect on its approval by the Governor and was to continue in effect until April 30, 1935. By Act of April 30, 1935, P. L. 96, the Milk Control Board Law of 1934 was amended and reenacted, and continued in effect until April 30, 1937. The Acts of 1934 and 1935, which were temporary, emergency measures were superseded and repealed by the permanent Milk Control Law of April 28, 1937, P. L. 417, which contained corresponding provisions for the licensing of milk dealers and their furnishing of bonds "conditioned for the payment by the milk dealer of all amounts due, including amounts due under this

act and the orders of the Commission, for milk sold by such producers to the milk dealer during the license year." The repealing clause, however, (sec. 1301) is not absolute but is qualified by the following provision: "except in so far as necessary to sustain or maintain the validity, prosecution or enforcement of any act done, bond posted, offense committed, liability, penalty or judgment incurred, or rule, regulation or order issued thereunder, and saved or continued by this act." Section 1203 of this act reads as follows: "Effect upon Proceedings, Duties and Rights under Other Act of Assembly.—All rules, regulations, orders, suits, hearings, investigations, prosecutions and all other proceedings or actions of any kind whatsoever of the Milk Control Board of the Commonwealth of Pennsylvania, as created or continued under acts of assembly prior to the effective date of this act and repealed hereby, in existence or pending prior to or upon the effective date of this act, and all penalties, obligations, appeals or violations of milk dealers and others under said rules, regulations, orders and prior acts of assembly incurred, pending or accrued prior to or upon the effective date of this act, shall be saved and continued in every manner and for all purposes after the effective date of this act, and shall be continued under the provisions hereof. All employes, papers and possessions of such predecessor board shall become the employes, papers and possessions of and subject to the commission created by this act.

"The repeal by this act of any other act shall not impair, repeal, or affect any act done, bond posted, offense committed, liability, penalty or judgment incurred, or rule, regulation or order issued prior to the time this act takes effect, but the same may be enforced, prosecuted or inflicted under the provisions of this act to the same extent as if such other act had not been repealed or had not expired.

"All licenses, permits, certificates, rules, regulations and orders issued or made under any act repealed by this act, and in full force and effect upon the effective date of this act, shall remain in full force and effect for the term issued or until revoked, suspended or superseded under the provisions of this act or rules, regulations or orders of the commission made hereunder."

The court below, relying upon the decisions of the Supreme Court and of this court in *Com. v. Mortgage Trust Co.*, 227 Pa. 163, 183, 76 A. 5; *Harvey v. Hazleton*, 81 Pa. Superior Ct. 1; *Com. v. McNamara*, 93 Pa. Superior Ct. 267; *Smith v. Cheltenham Twp.*, 35 Pa. Superior Ct. 507,—to which may be added, *Provident Life & Trust Co. v. Klemmer*, 257 Pa. 91, 100-101, 101 A. 351; *West v. Lysle*, 302 Pa. 147, 151, 153 A. 131; *Com. v. Meyers*, 290 Pa. 573, 584-585, 139 A. 374; *Com. v. Provident Trust Co.*, 287 Pa. 251, 257, 134 A. 377; *Toner's Est.*, 260 Pa. 49, 57, 103 A. 541; *Com. v. Salary Board*, 322 Pa. 138, 185 A. 278; *Haspel v. O'Brien*, 218 Pa. 146, 149, 67 A. 123—held that the action brought to enforce the liability of the bond in suit, to No. 151 Commonwealth Docket, 1936, of Dauphin County, was not affected by the repeal provisions of the Act of 1937 but was saved and kept in force by the saving provisions of section 1203, supra.

We have no doubt as to the legislative intent in the Act of 1937 to save and continue in force all prosecutions, suits, actions and other proceedings begun under the enforcement provisions of the Acts of 1934 and 1935 and pending when the Act of 1937 went into effect. The language could not be clearer. And we are satisfied that the language of the saving clause is broad enough to include the bond in suit and the action brought to enforce the liability under it, if recourse to a saving clause is necessary to continue it in force. But we are of opinion that even without such a saving clause the bond sued on in this action would not be invalidated

by the limitation provisions of the Act of 1934 and its amendment of 1935 nor by the repealing clause of the Act of 1937. The Act of 1934 is not a penal statute— though it contains penalties for its violation—, nor is the bond in suit a fine or penalty imposed by way of punishment. The primary object of the bond is to protect milk producers who sell milk to licensed dealers and to assure them that they will be paid for the product so sold and delivered in accordance with the schedule of prices fixed by the Milk Control Board. It is not punitive in character, but remedial and protective, and the repeal of the act will not operate so as to take away the protection furnished by the bond, in reliance on which the milk was sold and delivered while the statute was in force.

Chief Justice KEPHART in *Milk Control Board v. Eisenberg Farm Products*, supra, very aptly referred to the acts of assembly which require contractors on public works, etc. to give bonds to secure sub-contractors, mechanics, laborers and material men for labor and materials furnished the contractors on the work—citing the opinion of Mr. Justice SIMPSON in *Com. v. Great American Indemnity Co.*, 312 Pa. 183, 196, 167 A. 793. The reference is most appropriate to this case, for such bonds, just as the bond in suit, are not given by way of sanction or penalty, and are not penal in character, nor would their validity, once they are delivered and accepted, be affected by the subsequent repeal of the statutes requiring their execution and delivery. The sub-contractor or material man, who in reliance on the bond, furnished labor or material to the contractor in and about the work, would not lose the protection given him by the bond, because, after he had supplied the labor or materials, the legislature repealed the statute requiring such bonds to be given. The repeal would have no effect on the protection furnished by the bond. Nor does it here. The under-payments for milk pur-

chased by the licensee defendant from producers, which are sought to be recovered in this action, up to the penalty of the bond, all related to milk sold between May 4, 1934, when the bond was posted, and November 1, 1934, and during all of that period the Act of 1934 was in full force and effect. The rights of the aggrieved producers to the protection furnished by the bond were not affected by the subsequent expiration or revocation of the dealer's license nor by the expiration or repeal of the act under which the bond was delivered.

In *Commonwealth v. Robb,* 14 Pa. Superior Ct. 597, 603 (1900), it was held that the Act of May 2, 1899, P. L. 184, repealing, inter alia, the Act of April 22, 1846, P. L. 486, which imposed a mercantile tax on dealers, did not repeal proceedings already begun under the Act of 1846 to collect a mercantile tax for the year 1899 from defendant.

In *Bates v. Koch,* 6 Pa. 474, a scire facias on a recognizance taken in 1844 on an appeal under the 5th section of the Act of March 20, 1810, 5 Sm. L. 161, which was tried on May 10, 1845, it was held that the recognizance was not affected by the Act of March 20, 1845, P. L. 188, but the latter act would be applied only to recognizances taken after its effective date.

See also *Madden v. United States,* 80 Fed. (2d) 672, (C. C. A. No. 1), cited with approval by the Supreme Court of the United States in *United States v. Kapp,* 302 U. S. 214, 217, and *Kay v. United States,* 303 U. S. 1, 7.

(3) The operation of the bond would not have been affected by the promulgation of a later order changing the prices to be paid producers by dealers, made during the effective period of the bond: *United States v. Curtiss-Wright Corp.,* 299 U. S. 304, 331. The provisions of the bond would have applied automatically to the new rates. But as a matter of fact no such change was made during the effective period of the bond, and a sub-

sequent change could have no effect on it. When the bond was given, Order No. 17 was in effect. It remained so until January 16, 1936, when Order No. 24 superseded it. The period covered by the present action is from May 4, 1934 to November 1, 1934. Order No. 17 was in force during the whole time. A subsequent change, made after the effective period of the bond, would have no effect on the rights of producers which had accrued under the order in force at the time. See discussion under the second heading.

(4) The Act of January 2, 1934 did not require that orders of the Milk Control Board should be approved by the Governor. The Act of April 30, 1935, amending and reenacting it, did. But it had no effect on previous orders issued under the Act of 1934. The amendment became effective as of the date of its final enactment, but did not require orders issued before its enactment to be approved by the Governor. "Where a statute is amended and reenacted the portions of the amended sections which are simply repeated from the old law are not considered as repealed and reenacted but as law continuously from their first enactment by the old act and not born of the reenactment; while the new or changed portions are law for the first time from the reenactment": *Harvey v. City of Hazleton,* 81 Pa. Superior Ct. 1, 6.

(5) The averment in the affidavit of defense that the order of the Milk Control Board fixing the prices to be paid by milk dealers to producers was invalid because it failed to "take into consideration all conditions affecting the milk industry, including *the amount necessary to yield a reasonable return* to the producer and *to the milk dealer,*" is without substantial merit.

In *Rohrer v. Milk Control Board,* 322 Pa. 257, 280, it was said: "The appellant could have appeared and been heard at the hearings of the board, and could have appealed to the courts from their findings and order fixing

prices, but he did not. Having failed to do so at the proper time he is precluded from raising those questions now: *Hegeman Farms Corp. v. Baldwin*, 293 U. S. 163."

In *Myers v. Bethlehem Shipbuilding Corp.*, 303 U. S. 41, 50, Mr. Justice BRANDEIS speaking for the court, said it was a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Citing numerous cases, inter alia, *First Nat. Bank v. Board of County Commrs.*, 264 U. S. 450, 455, 456; *Anniston Mfg. Co. v. Davis*, 301 U. S. 337, 343.

The purpose of the hearing by the Board was to afford dealers a full opportunity to present the facts and figures within their control in order that prices fair and just to both producer and dealer would be arrived at. If the defendant failed to avail himself of this opportunity he has no one but himself to blame and cannot now inject the results flowing from his own inaction as a defense to the suit on this bond.

Chief Justice KEPHART in *Colteryahn Sanitary Dairy v. Milk Control Commission*, 332 Pa. 15, 1 A. (2d) 775, and *Keystone Dairy Co. v. Milk Control Commission*, 332 Pa. 15, 1 A. (2d) 775, cases arising under the Act of April 28, 1937, supra, said: "It was also the legislative intent that the hearings before the Commission in relation to price-fixing should be complete. By this it is meant that all 'essential facts in the first instance,' should be submitted 'to the Commission at its hearing' either by the dealers or the producers in any application for change of price or contest over price (section 906). It was not the intention of the legislature that dealers or producers should withhold evidence at such hearing, and then, on appeal, submit that evidence to the Dauphin County court, thus presenting an entirely new case, and forcing the court to exercise legislative powers. With this purpose in view, milk dealers

and producers may be compelled to submit all books and accounts to the Commission, as evidence, for the purpose of determining whether a profit or loss has been made on all prices of milk in the several classes. The Commission and the persons interested should have free access to this evidence, with the right to conduct an examination or cross-examination, if the Commission is to properly function. The procedure in both of these appeals was erroneous in that the dealers did not submit to the Commission all the evidence that was available, so that it could properly form its judgment as to what the price of milk should be to the producer. The responsibility for such decisions must first rest on this legislative agency, exercising legislative power. On appeal to the Dauphin County court to set aside an order, if evidence is there brought forward that could, and should, have been produced before the Commission, that court should promptly return the case to that body directing that all the available evidence be heard and considered, or in its discretion, the court may simply decline to receive the evidence."

It follows that the Dauphin County court would have even less power, in this action on the bond, to fix and determine the fair and just price to be paid producers by dealers than that court had in the direct proceedings authorized by the Act of 1937, which were under review in the cases just referred to.

The assignment of error in each appeal is overruled and the judgment is affirmed.