## MILK CONTROL BOARD *v.* EISENBERG FARM PRODUCTS.

No. 426. Argued February 8, 1939.—Decided February 27, 1939.

*Mr. Harry Polikoff*, Deputy Attorney General of Pennsylvania, with whom *Mr. Guy K. Bard*, Attorney General, was on the brief, for petitioner.

348

*Mr. Thomas D. Caldwell* for respondent.

By leave of Court, *Messrs. John J. Bennett, Jr.,* Attorney General of New York, *Henry Epstein,* Solicitor General, *Milo R. Kniffen,* and *Robert G. Blabey* filed a brief on behalf of the Commissioner of Agriculture and Markets of the State of New York, as *amicus curiae,* in support of petitioner.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

We are called upon to determine whether a local police regulation unconstitutionally regulates or burdens interstate commerce.

Pennsylvania, by an Act of April 30, 1935 [1] has declared the milk industry in that Commonwealth to be a business affected with a public interest. The statute defines a milk dealer as any person "who purchases or handles milk within the Commonwealth for sale, shipment, storage, processing or manufacture within or without the Commonwealth." It creates a Milk Control Board with authority to investigate, supervise, and regulate the industry and imposes penalties for violations of the law or of the Board's orders issued pursuant to the law, and requires a dealer to obtain a license by application to the Board. Licenses may be refused, suspended, or revoked for specified causes. A requisite of obtaining a license is that the dealer shall file with the Board a bond conditioned for the prompt payment of all amounts due to producers for milk purchased by the licensee. The act empowers the Board to require the dealer to keep certain records and directs the Board, with the approval of the Governor, to "fix, by official order, the minimum prices to be paid by milk dealers to producers and others for milk." The Board may vary the price according to the production, use, form, grade or class of milk.[2]

. The petitioner, the Milk Control Board, filed its bill in a Common Pleas Court to restrain the appellee from continuing to do business without complying with the statute. The respondent by its answer sought to justify

---

[1] P. L. 96; 31 P. S. § 684.

[2] The act was repealed by an Act of April 28, 1937, P. L. 417, but all proceedings under it were saved by § 1203 of the later act. See *Commonwealth* v. *Ortwein,* 132 Pa. Superior Ct. 166; 200 Atl. 859.

failure to comply on the ground that it was engaged in interstate commerce. After trial the court dismissed the bill. The Supreme Court of Pennsylvania affirmed the decree.[3]

The respondent, a Pennsylvania corporation, leases and operates a milk receiving plant in Elizabethville, Pennsylvania, at which it buys milk from approximately one hundred and seventy-five farmers in the neighborhood, who bring their milk to the plant in their own cans. There the milk is weighed and tested by the respondent and emptied into large receiving tanks in which it is cooled preparatory to shipment. This requires retention of the milk for less than twenty-four hours; it is not processed, and no change occurs in its constituent elements. The milk is then drawn from the cooling tanks into tank trucks operated by a contract carrier and transported into New York City for sale there by the respondent. The journey is continuous from Elizabethville to New York City. All milk purchased by the respondent at Elizabethville is shipped to and sold in New York. During the year 1934 approximately 4,500,000,000 pounds of milk were produced in Pennsylvania of which approximately 470,000,000 pounds were shipped out of the state.

The respondent contends that the act, if construed to require it to obtain a license, to file a bond for the protection of producers, and to pay the farmers the prices prescribed by the Board, unconstitutionally regulates and burdens interstate commerce. The State Supreme Court has held that the statute is a valid police regulation.[4] The petitioner concedes that the purchase, shipment into

---

[3] 332 Pa. 34; 200 Atl. 854.

[4] See the opinion below, and *Colteryahn Sanitary Dairy* v. *Milk Control Comm'n*, 332 Pa. 15; 1 Atl. 2d, 775; *Keystone Dairy Co.* v. *Milk Control Comm'n*, 332 Pa. 15; 1 Atl. 2d 775; *Rohrer* v. *Milk Control Board*, 322 Pa. 257; 186 Atl. 336.

another state, and sale there of the milk in which the respondent deals is interstate commerce. The question for decision is whether, in the absence of federal regulation, the enforcement of the statute is prohibited by Article I, § 8 of the Constitution. We hold that it is not.

When the people declared "The Congress shall have Power . . . To regulate Commerce . . . among the several States, . . ." their purpose was clear. The United States could not exist as a nation if each of them were to have the power to forbid imports from another state, to sanction the rights of citizens to transport their goods interstate, or to discriminate as between neighboring states in admitting articles produced therein. The grant of the power of regulation to the Congress necessarily implies the subordination of the states to that power. This court has repeatedly declared that the grant established the immunity of interstate commerce from the control of the states respecting all those subjects embraced within the grant which are of such a nature as to demand that, if regulated at all, their regulation must be prescribed by a single authority.[5] But in matters requiring diversity of treatment according to the special requirements of local conditions, the states remain free to act within their respective jurisdictions until Congress sees fit to act in the exercise of its overriding authority.[6] One of the commonest forms of state action is the exercise of the police power directed to the control of local conditions and exerted in the interest of the welfare of the state's citizens. Every state police statute necessarily will affect interstate commerce in some degree, but such a statute does not run counter to the grant of Congressional power merely because it incidentally or indirectly involves or burdens interstate commerce. This is so even though,

---

[5] *Minnesota Rate Cases*, 230 U. S. 352, 399, and cases cited.

[6] *Ibid.*

should Congress determine to exercise its paramount power, the state law might thereby be restricted in operation or rendered unenforceable.[7] These principles have guided judicial decision for more than a century. Clearly they not only are inevitable corollaries of the constitutional provision, but their unimpaired enforcement is of the highest importance to the continued existence of our dual form of government. The difficulty arises not in their statement or in a ready assent to their propriety, but in their application in connection with the myriad variations in the methods and incidents of commercial intercourse.

The purpose of the statute under review obviously is to reach a domestic situation in the interest of the welfare of the producers and consumers of milk in Pennsylvania. Its provisions with respect to license, bond, and regulation of prices to be paid to producers are appropriate means to the ends in view. The question is whether the prescription of prices to be paid producers in the effort to accomplish these ends constitutes a prohibited burden on interstate commerce, or an incidental burden which is permissible until superseded by Congressional enactment. That question can be answered only by weighing the nature of the respondent's activities, and the propriety of local regulation of them, as disclosed by the record.

The respondent maintains a receiving station in Pennsylvania where it conducts the local business of buying milk. At that station the neighboring farmers deliver their milk. The activity affected by the regulation is essentially local in Pennsylvania. Upon the completion of that transaction the respondent engages in conserving and transporting its own property. The Commonwealth does not essay to regulate or to restrain the shipment of the respondent's milk into New York or to regulate its sale or the price at which respondent may sell it in New York.

---

[7] *Ibid.*, pp. 402–403.

If dealers conducting receiving stations in various locali-
ties in Pennsylvania were free to ignore the requirements
of the statute on the ground that all or a part of the milk
they purchase is destined to another state the uniform
operation of the statute locally would be crippled and
might be impracticable. Only a small fraction of the milk
produced by farmers in Pennsylvania is shipped out of
the Commonwealth. There is, therefore, a comparatively
large field remotely affecting and wholly unrelated to in-
terstate commerce within which the statute operates.
These considerations we think justify the conclusion that
the effect of the law on interstate commerce is incidental
and not forbidden by the Constitution, in the absence of
regulation by Congress.

None of the decisions on which the court below and
the respondent rely rules the instant case. *DiSanto* v.
*Pennsylvania*, 273 U. S. 34, involved a state law directed
solely at foreign commerce; *Lemke* v. *Farmers Grain Co.*,
258 U. S. 50, condemned a state statute affecting com-
merce, over ninety per cent. of which was interstate and
essaying to regulate the price of commodities sold within
the state payable and receivable in the state of destina-
tion; *Shafer* v. *Farmers Grain Co.*, 268 U. S. 189, also
dealt with a state law intended to regulate commerce
almost wholly interstate in character. In *Baldwin* v.
*Seelig*, 294 U. S. 511, this court condemned an enact-
ment aimed solely at interstate commerce attempting to
affect and regulate the price to be paid for milk in a
sister state, and we indicated that the attempt amounted
in effect to a tariff barrier set up against milk imported
into the enacting state.

The decree must be reversed and the cause remand-
ed for further proceedings not inconsistent with this
opinion.

*Reversed.*

[Over.]

MR. JUSTICE McREYNOLDS and MR. JUSTICE BUTLER are of opinion that the Supreme Court of Pennsylvania properly concluded that under former opinions of this Court the questioned regulations constituted a burden upon interstate commerce prohibited by the Federal Constitution.