In the Matter of the Application of LINDEN FARMS MILK & CREAM Co., INC., Petitioner, to Review a Determination Made by HOLTON V. NOYES, as Commissioner of Agriculture and Markets of the State of New York, Respondent.

Third Department, November 1, 1939.

*Harry L. Marcus* [*Herbert L. Maltinsky* of counsel], for the petitioner.

*Milo R. Kniffen* [*Robert G. Blabey* of counsel], for the respondent.

*Edwin Stephen Schweig* [*Julius November* with him on the brief], for New York Retail Milk Distributors, Inc., as *amicus curiæ*.

CRAPSER, J. The review at bar constitutes an appeal from the Commissioner's determination of November 28, 1938, revoking the milk dealer's license issued to the Linden Farms Milk & Cream Co., Inc., under date of May 4, 1938.

The petitioner made a verified license application and delivered it to the Department's Division of Milk Control on March 28, 1938. Question 11 of such application was as follows:

" 11. Give nature of business transacted: Do you utilize milk or cream purchased for manufacture? No. Do you sell milk and/or cream to other licensed dealers? Yes. Do you operate delivery routes? Yes. If so, give below number of each type of

route operated: (a) 50 Routes serving house customers (retail). (b) Routes serving stores, restaurants, hotels or institutions (wholesale). (c) Routes where both retail and wholesale trade are served. (d) Routes supplying other licensed dealers only."

In the answers to question 11 the petitioner represented to the Commissioner that it operated fifty retail delivery routes serving house customers and also sold milk and cream to other licensed dealers.

Question 29 of the application reads as follows: " Do you agree not to buy milk or cream from or sell milk or cream to any milk dealer who has failed to obtain a Milk Dealer's License as required by Article 21 of the Agriculture and Markets Law? Yes."

The license which has been revoked was issued by the Commissioner after the application had been filed and relying upon the truth of the answers to the questions therein propounded by the applicant for the license.

On October 14, 1938, the Commissioner directed the petitioner to show cause at a hearing to be held before the Commissioner or a person designated by him at the office of the Division of Milk Control, State Office Building, Albany, on the 26th of October, 1938, why the milk dealer's license issued to the petitioner for the year ending March 31, 1939, should not be revoked, pursuant to the provisions of article 21 of the Agriculture and Markets Law, because of sales by the petitioner of milk and cream to Pop Downing, Frank Allen and approximately thirty-three other persons, whose names were unknown to the Commissioner, all of whom were not licensed by the Commissioner to purchase, handle or sell milk or cream during the period of such sales. On October 26, 1938, an adjournment was granted to November 10, 1938, in New York city.

There was a direct charge of sales by the petitioner to unlicensed milk dealers, two of whom were definitely named.

The petitioner now urges that the notice was defective in that it failed to [notify or apprise the petitioner of the specific charges in the complaint.

The petitioner made no application for a bill of particulars or for additional information other than that shown in the order to show cause. The charge upon which the license was to be revoked was clear and definite in the order to show cause and the petitioner's claim that it was not apprised of the specific complaint made against it is without foundation in fact.

The record of the hearings in an arbitration proceeding had on April 13 and 14, 1938, between the petitioner and the Milk Wagon Drivers' Local No. 584, in the Supreme Court of Kings county, was offered in evidence by the petitioner's counsel. In that proceeding

Mr. Bernard Israel was sworn and testified that the petitioner had no interest in any of the trucks operated by the thirty-five men whom he described as jobbers; that on the truck of Downing appeared the name of the Linden Farms Milk & Cream Co., Inc.; that is the full name of the company; that the truck was registered in the name of Downing and that it was owned and operated by him, and that the name of the petitioner appeared upon all of the thirty-five trucks.

Mr. David Israel was also sworn; he was an officer of the petitioner; he testified that the petitioner did not own any of the routes, did not hire anybody to drive any of the wagons; that they had nothing whatever to do with the hiring or firing of the men working on those routes. No payments were made by the company to any help driving the wagons; that the name of the Linden Farms was painted upon all of those trucks.

Mr. Downing, the man named as "Pop Downing" in the order to show cause, was the second witness called by the respondent. He testified that he sold milk for a living; he had 200 or more retail customers, mostly in Ozone Park. He had purchased milk from the petitioner for seven years, paying for it weekly; that the petitioner did not have any record of his customers; that he owned the truck and paid for its upkeep and that he also owned the good will of the business and that whatever he made above the cost price of the milk was his own and that he had no Social Security number and that he did not contribute to the Social Security. He had no license from the Department of Agriculture and Markets and had never applied for one and had never asked any one in the Department about one.

Mr. Frank Allen was called by the respondent; he said his business was buying and selling milk; that he was employed by himself and bought about 325 quarts of milk from Linden Farms per day; he served approximately 150 customers. Linden's name was on his truck; "Owned and operated by Frank Allen" appeared on the door. He said that when he gave receipted bills to the customers they were in Linden's name; that he sold at retail directly to the consumer; that if anybody wanted milk they called Linden Farms; that Linden Farms sometimes made deliveries for him; that he served the route himself; that his pay consisted in the difference between the price he paid Linden Farms and what he sold the milk for to the consumers.

The respondent called Hyman Smith, who said that he was in the milk business and explained his operations by saying that he bought milk from the Linden Farms; that they paid cash every day; that he was charged by the quart; that he bought milk for

six fellows; six of them bought together through him and that the milk was charged to him; that the other five distributors paid him and he paid the Linden Farms; sometimes they cashed in every day and sometimes two or three times a week for the milk that they purchased; that they owned their own routes and their own trucks; none of the six people had any license from the Commissioner of Agriculture and Markets; that the six buying their milk through him received their milk for eight cents, whereas if they bought directly they would have had to pay eight and a half cents.

Inspector Hart was the last witness called by the respondent; he testified that on November 7, 1938, he visited the plant of the petitioner, and he spoke with Mr. David Israel and Mr. Bernard Israel. He notified them that he had come to examine their records in reference to the operation of their business; he was told that their business was being operated through jobbers; that they were furnishing the milk that was being used on these routes.

Exhibit 7 was introduced and received in evidence without objection; it showed sales of milk to B. Fischer who was not licensed by the Commissioner to sell milk.

Exhibit 8 was received in evidence by consent; it is a list of persons purchasing milk from the petitioner. It was obtained from the stock book which was produced by Mr Israel. None of the names appearing on Exhibit 8 were licensed by the Commissioner.

Mr. David Israel was called on behalf of the petitioner; he was the licensee in this particular case; he was an officer of the Linden Farms; he testified that they handled about 20,000 quarts daily and that they served about forty routes and that the routes were all of the character described by Smith, Allen and Downing; that the name of Linden Farms appeared upon all the cases, milk bottles and caps and that they owned them. Liability insurance was carried by both the owners of the routes and the Linden Farms. He testified that none of the men to whom they sold milk were employed by them; that they worked for themselves. These men operating the trucks got a daily and weekly charge record which was recorded weekly and that during the week they turned money in until the payment of bills was completed; that the trucks were owned by the subdealers; that the Linden Farms made no claim to the customers served; that he had no list of the dealers' customers and that they were not told what customers to serve.

Section 253 of the Agriculture and Markets Law defines milk dealers as follows: " ' Milk dealer ' means any person who purchases or handles or sells milk, including brokers, agents, co-partnerships,

co-operative corporations and unincorporated co-operative associations. Each corporation which if a natural person would be a milk dealer within the meaning of this article, and any subsidiary and affiliate of such corporation similarly engaged, shall be deemed a milk dealer within the meaning of this definition. A hotel or restaurant which sells only milk consumed on the premises where sold, or a producer who delivers milk only to a milk dealer, shall not be deemed a milk dealer."

Section 257 of the Agriculture and Markets Law declares it unlawful for a milk dealer to sell milk to an unlicensed dealer and also provides: "The Commissioner may by official order exempt from the license requirements provided by this article, milk dealers who purchase or handle milk in a total quantity not exceeding three thousand pounds in any month."

Section 258-c provides: "The Commissioner may decline to grant or renew a license or may suspend or revoke a license already granted, upon due notice and opportunity of hearing to the applicant or licensee, when he is satisfied of the existence of any of the following reasons: * * *.

"(h) Where it is shown that any statement upon which the license was issued is or was false or misleading or deceitful in any particular. * * *.

"(k) Where the milk dealer has violated any of the provisions of this chapter."

The Commissioner had a hearing and upon the evidence taken made the following conclusions after making the necessary findings.

"Therefore, by reason of the misstatements in the licensee's application, upon which a milk dealer's license was issued, the sales of milk to 58 unlicensed individuals, evincing a continuance in a course of dealing which satisfies the undersigned Commissioner of the licensee's inability or unwillingness to properly conduct the business of a milk dealer, Milk Dealer's License No. 3610, heretofore issued to the licensee, Linden Farms Milk & Cream Co., Inc., 43 Buffalo Avenue, Brooklyn, N. Y., for the license year ending March 31, 1939, should be revoked, such revocation to take effect immediately, and an order to that effect should forthwith issue.

"H. V. NOYES (Signed)
"HOLTON V. NOYES, *Commissioner of Agriculture and Markets of the State of New York.*

"Dated at Albany, N. Y.
November 28, 1938."

The statute under which the Commissioner is acting is constitutional. (*Baldwin* v. *Burdick*, 243 App. Div. 250; *People* v.

*Beakes Dairy Company,* 222 N. Y. 416; *People* v. *Perretta,* 253 id. 305; *Ten Eyck* v. *Eastern Farm Products, Inc.,* 160 Misc. 402; Id. 404; affd., 249 App. Div. 891; *Milk Control Board* v. *Eisenberg Farm Products,* 306 U. S. 346; *Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.* (four cases), 281 N. Y. 187; *United States* v. *Rock Royal Co-op., Inc.,* 307 U. S. 533.)

Section 254 of the Agriculture and Markets Law provides among other things as follows: " Any designated employee may sign and issue subpoenas and may administer oaths to witnesses and conduct hearings and investigations."

All of the evidence in the case fully supports the conclusions reached by the Commissioner. The petitioner does not raise any issue as to the immunity of the distributing dealers from the licensing requirements of article 21.

This proceeding is a review of the Commissioner's action in revoking the Linden Farms' license.

The brief of the *amicus curiæ* raises the question that sales to independent contractors like Downing, Allen and Smith were not a violation of article 21 of the Agriculture and Markets Law.

That question is not an open question in this court. (*Baldwin* v. *Burdick,* 243 App. Div. 250.) And if they be relieved from obtaining a license it must come by official order from the Commissioner under section 257 of the law or by an act of the Legislature changing the definition of a " milk dealer."

Section 258-c provides that " Whenever a milk dealer's license is denied or revoked there shall be filed in the office of the Division of Milk Control a memorandum by the director or by the person who presides at the hearing given to the applicant or licensee which memorandum shall briefly state the reasons for the denial or revocation of the license, but formal findings of fact shall not be required to be made or filed."

In the present case Exhibits A and B, attached to the answer, fully comply with this section.

The petitioner had a fair hearing and the facts are uncontroverted and the proof supports the findings. Upon the law and the facts the Commissioner's order of November 28, 1938, revoking the petitioner's milk dealer's license should be confirmed, with costs.

BLISS, SCHENCK and FOSTER, JJ., concur; HILL, P. J., dissents, with an opinion.

HILL, P. J. (dissenting). The statement by petitioner that it operated fifty routes serving house customers was in accordance with the facts. The operator of a milk route under arrangements

similar to those disclosed here has been held to be an employee. (*Glielmi* v. *Netherland Dairy Co.*, 254 N. Y. 60.) The Commissioner of Agriculture is not authorized to exercise control of the terms of payment of petitioner's route operators. Such supervision is beyond the power of the Legislature to grant or the Commissioner to exercise, since the public interest and health are in no way involved.

. I favor an annulment of the determination.

Determination confirmed, with fifty dollars costs and disbursements.