In the Matter of H. P. HOOD & SONS, INC., Appellant, against C. CHESTER DU MOND, as Commissioner of Agriculture and Markets of the State of New York, Respondent.

Argued January 9, 1948; decided March 11, 1948.

*John R. Titus* for appellant. I. The commissioner's order is invalid under the commerce clause, section 8 of article I of the United States Constitution, inasmuch as it denies petitioner the right to purchase milk in interstate commerce. (*United States* v. *Rock Royal Co-op., Inc.,* 307 U. S. 533; *Currin* v. *Wallace,* 306 U. S. 1; *Flanagan* v. *Federal Coal Co.,* 267 U. S. 222; *Shafer* v. *Farmers Grain Co.,* 268 U. S. 189; *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282; *Parker* v. *Brown,* 317 U. S. 341.) II. The effect and purpose of the commissioner's order are to prohibit interstate commerce. (*Baldwin* v. *G. A. F. Seelig,* 294 U. S. 511.) III. A State may not directly prohibit the business of buying commodities for interstate shipment. (*Freeman* v. *Hewit,* 329 U. S. 249; *Dahnke-Walker Co.* v. *Bon-*

*durant,* 257 U. S. 282; *Parker* v. *Brown,* 317 U. S. 341; *State of California* v. *Thompson,* 313 U. S. 109; *Duckworth* v. *State* of *Arkansas,* 314 U. S. 390; *South Carolina State Highway Dept.* v. *Barnwell Brothers,* 303 U. S. 177; *Southern Pacific Co.* v. *State of Arizona,* 325 U. S. 761; *United States* v. *Rock Royal Co-op., Inc.,* 307 U. S. 533; *Mulford* v. *Smith,* 307 U. S. 38; *State of Oklahoma* v. *Kansas Natural Gas Co.,* 221 U. S. 229; *State of Pennsylvania* v. *State of West Virginia,* 262 U. S. 553; *Foster Packing Co.* v. *Haydel,* 278 U. S. 1; *Baldwin* v. *G. A. F. Seelig,* 294 U. S. 511; *People* v. *Perretta,* 253 N. Y. 305; *Milk Control Bd.* v. *Eisenberg Farm Products,* 306 U. S. 346.) IV. The order of the commissioner is unconstitutional because it conflicts with existing Federal law regulating interstate commerce in milk. (*Quaker Oats Co.* v. *City of New York,* 295 N. Y. 527; *Hines* v. *Davidowitz,* 312 U. S. 52; *Cloverleaf Butter Co.* v. *Patterson,* 315 U. S. 148; *Hill* v. *State of Florida,* 325 U. S. 538; *Bethlehem Steel Co.* v. *New York State Labor Relations Bd.,* 330 U. S. 767; *H. P. Hood & Sons* v. *United States,* 307 U. S. 588; *United States* v. *Rock Royal Co-op., Inc.,* 307 U. S. 533.) V. The order of the commissioner is unreasonable and is supported neither by the findings nor by the evidence. (*Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488; *Matter of Dusinberre* v. *Noyes,* 284 N. Y. 304.) VI. There is no basis for the commissioner's conclusion that the operation of a plant at Greenwich might tend to destroy competition. (*Matter of Eisenstein* v. *Du Mond,* 268 App. Div. 320.) VII. The commissioner's order cannot be sustained on the ground that operation of a plant at Greenwich " would not be in the public interest." (*Matter of Dusinberre* v. *Noyes,* 263 App. Div. 445; *New York Central Securities Co.* v. *United States,* 287 U. S. 12; *Federal Radio Comm.* v. *Nelson Brothers Bond & Mortgage Co.,* 289 U. S. 266; *Matter of International Ry. Co.* v. *Public Service Comm.,* 264 App. Div. 506.)

*Robert G. Blabey* and *Donald L. Brush* for respondent. I. The commissioner has not done and does not threaten to do anything to interfere with or place an unconstitutional burden on petitioner's interstate milk shipments. II. The record does not contain the groundwork on which a determination as to whether the commissioner's denial of permission to build a

fourth plant in this State constitutes an unconstitutional burden on petitioner's interstate milk shipments. (*Nippert* v. *Richmond,* 327 U. S. 416; *Nelson* v. *Sears, Roebuck & Co.,* 312 U. S. 359; *Jongebloed* v. *Erie R. R. Co.,* 296 N. Y. 912, 296 N. Y. 994; *Milk Control Bd.* v. *Eisenberg Farm Products,* 306 U. S. 346; *Quaker Oats Co.* v. *City of New York,* 295 N. Y. 527; *Nebbia* v. *New York,* 291 U. S. 502; *Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488; *District of Columbia* v. *Brooke,* 214 U. S. 138; *Camfield* v. *United States,* 167 U. S. 518; *People* v. *Perretta,* 253 N. Y. 305; *Townsend* v. *Yeomans,* 301 U. S. 441; *Lemke* v. *Farmers Grain Co.,* 258 U. S. 50.) III. The commissioner's order does not conflict with Federal jurisdiction. The Federal Government has not invaded the milk licensing field. (*Kelly* v. *State of Washington,* 302 U. S. 1.) IV. Petitioner's position is constitutionally untenable. (*Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194; *Matter of Crowley's Milk Co.* v. *Ten Eyck,* 270 N. Y. 328.)

DESMOND, J. We granted leave to appeal here, to review a unanimous confirmation by the Appellate Division of a determination of the State Commissioner of Agriculture and Markets. The commissioner had denied the application of petitioner for an extension of its milk dealer's license issued pursuant to section 257 of the Agriculture and Markets Law. The extension would have permitted petitioner to operate a milk receiving plant at Greenwich, New York, in addition to petitioner's other similar plants already licensed and operating at Eagle Bridge, Salem and Norfolk, in this State. Eagle Bridge is in Rensselaer County and Salem and Greenwich are in Washington County, Rensselaer County being adjacent to Washington County on the south, and both these counties being on the easterly edge of New York State, bordering on Massachusetts and Vermont. Petitioner's Norfolk establishment is in St. Lawrence County in another part of New York State, and serves a different area and a different group of milk producers. The present Eagle Bridge and Salem depots, however, are quite close together and the proposed Greenwich plant, for which a license has been refused, is ten miles from Salem and twelve miles from Eagle Bridge. Petitioner's main contentions on the appeal are: first,

that the commissioner's order is violative of the Commerce Clause of the United States Constitution (art. I, § 8, cl. 3) ; and second, that the order is not supported by the commissioner's findings made after the hearings conducted by him, or by the evidence. The two concurring opinions in the Appellate Division both said that the commissioner had acted on adequate proof and appropriate findings. Neither opinion discussed the constitutional point and it was not raised in the petition for review under article 78 of the Civil Practice Act. However, it was argued in petitioner's brief in the Appellate Division, and so is available to appellant in this court (see *Jongebloed* v. *Erie R. R. Co.*, 296 N. Y. 912).

Petitioner's business is wholly interstate in character. It purchases, at its several locations, milk delivered there by farmer-producers, weighs, tests and cools it (if not already cooled), then ships it, the same day, without any processing, to the Boston, Massachusetts, marketing area. Petitioner's procedures at the proposed Greenwich plant would be exactly the same. It appeared — and the commissioner found — that the new Greenwich plant would to some extent serve the convenience of petitioner and its suppliers. The Eagle Bridge and Salem depots have experienced some difficulty in the past in handling, before the 9 :00 A.M. daily deadline for shipment out, the large quantities of milk brought there during the flush season. If the Greenwich facilities were added, petitioner would divert thither, and away from Salem and Eagle Bridge, some 300 cans of milk now arriving daily at Salem and Eagle Bridge, and would allow, but not require, any individual dairy farmer to use the depot nearest his farm. In addition, petitioner hoped, when and if it should go into operation at Greenwich, to take on some twenty to thirty new producers at the new place. Several other milk dealers have plants near Greenwich and some of them have facilities for handling more milk than they are now getting. The commissioner found all these things as facts, and found also that some Troy, New York, retail milk distributors now obtain milk in the area where applicant purchases and that " the supply of milk for the Troy market during the last short season of October through January was inadequate." It was the commissioner's " conclusion " that the opening of another milk plant by petitioner and the taking on by it of producers now delivering to other

dealers, would tend to reduce the volume at those other dealers' plants, thus tending to increase milk handling costs there, that there would be a tendency to deprive Troy and other local markets of their milk supply in flush seasons, that all producers now had outlets for their milk, that the licensing of the new Greenwich establishment would tend to destructive competition in an already adequately served market, and would not be in the public interest.

Petitioner's whole business, present and proposed, is interstate commerce (*United States* v. *Rock Royal Co-op., Inc.,* 307 U. S. 533; *Milk Control Board* v. *Eisenberg Farm Products,* 306 U. S. 346). A State cannot embargo the importation or exportation of legitimate articles of trade (see *City of Buffalo* v. *Reavey,* 37 App. Div. 228) since, if such power existed, to quote the classic language of *Oklahoma* v. *Kansas Natural Gas Co.* (221 U. S. 229, 255): "Pennsylvania might keep its coal, the Northwest its timber, the mining States their minerals." The order here attacked is of course not a direct prohibition of such exports, nor a prohibition in form, but petitioner insists that it is a prohibited interference with interstate commerce, since, according to petitioner, it "by its necessary operation prevents, obstructs or burdens such transmission" (*Pennsylvania* v. *West Virginia,* 262 U. S. 553, 596–597; see *People* v. *Cunard White Star, Ltd.,* 280 N. Y. 413). Similar attacks were made in *Milk Control Board* v. *Eisenberg Farm Products* (*supra*) on the enforcement, against milk bought for interstate shipment, of a Pennsylvania statute requiring that milk dealers like this petitioner, obtain State licenses, file surety bonds and pay to producers at least the minimum price fixed by the Pennsylvania Milk Control Board. The Supreme Court, by Justice ROBERTS, said (p. 352) that the real question was whether the prescription of prices fixed in an effort to control local conditions in the milk business, "constitutes a prohibited burden on interstate commerce, or an incidental burden which is permissible until superseded by Congressional enactment." Describing the Eisenberg Company's purchase of milk at its receiving stations in Pennsylvania as a "local business" and "essentially local in Pennsylvania", the Supreme Court pointed out that the receiver's transaction with the farmer was completed when the price was paid and that the receiver

thereafter engaged " in conserving and transporting its own property." Distinguishing a number of earlier cases, the *Eisenberg* decision held that in licensing these dealers and fixing their prices, Pennsylvania did not " essay to regulate or to restrain the shipment of the respondent's milk into New York or to regulate its sale or the price at which respondent may sell it in New York." We say the same as to the action of the New York commissioner (respondent here) in dealing with an essentially local situation. Petitioner, under its present, unenlarged license, may still buy, at its Eagle Bridge, Salem and Norfolk locations, as much milk as it can get, and may send it where it will. Petitioner proved that an additional location would serve the convenience of some of the dairymen and of itself. The commissioner, however, found that the producers were adequately served by existing facilities, and that petitioner's proposed new branch would have a tendency to draw customers and milk away from local markets, and set up undesirable competition between petitioner and other dealers. That was the kind of local milk situation with which the State is authorized to deal (*Nebbia* v. *New York*, 291 U. S. 502) and any interference with the free flow of interstate commerce was incidental only. It may be remarked that there is here no showing as to how much New York milk is exported across the State line. Absent such a showing, we cannot tell what proportion such interstate shipments bear to the whole of the production as to which the State licensing statute operates. In the *Eisenberg* case, where it was shown that only a small fraction of the milk produced in Pennsylvania went out of the State, the court found that to be another reason why " the effect of the law on interstate commerce is incidental and not forbidden by the Constitution, in the absence of regulation by Congress " (306 U. S. at p. 353). New York's activity, it seems to us, is within the " residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it " (see *Southern Pacific Co.* v. *Arizona*, 325 U. S. 761, 767). Petitioner's answer to all this is that the determination here does not regulate, but in fact prohibits. As we see it, there is neither form nor substance of prohibition, only permissible regulation of local business.

Petitioner argues, further, that the commissioner's order here under attack, conflicts with Federal milk order No. 4 issued pursuant to the Agricultural Marketing Agreement Act of 1937 (U. S. Code, tit. 7, § 671 *et seq.*) which order regulates the handling, price, etc., of milk sold in interstate commerce in the Boston area and which Federal order is valid as to this petitioner and its business (see *Hood & Sons* v. *United States,* 307 U. S. 588). We see no conflict between the Federal control set up by order No. 4 and the local licensing of dealers, here under scrutiny. If the New York licensing laws conflict with Federal order No. 4, then the Pennsylvania licensing held valid in the *Eisenberg* case (*supra*), was equally inconsistent with the Secretary of Agriculture's so-called " New York Price Order ", or order No. 27, effective September 1, 1938, similar to the Boston order No. 4 and called to the Supreme Court's attention in the briefs in the *Eisenberg* case which was decided in February, 1939.

Petitioner's final attack on the commissioner's determination assails it as unreasonable and unsupported by any evidence. The Agriculture and Markets Law (§ 258-c) forbids the issuance of such a license " unless the commissioner is satisfied * * * that the issuance of the license will not tend to a destructive competition in a market already adequately served, and that the issuance of the license is in the public interest." The commissioner, as hereinabove noted, found, in petitioner's proposal, a tendency to destructive competition in an adequately served market, and that the public interest would not be served thereby. There was a basis for those findings, and we could not oppose any contrary views of ours, if we had any, to that of the State officer commissioned to make such decisions.

The order should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, THACHER, DYE and FULD, JJ., concur.

Order affirmed.