# THE ATTORNEY GENERAL
## OF TEXAS


August 27, 1952

Hon. Geo. W. Cox, M.D.        Opinion No. V-1512
State Health Officer
State Dept. of Health        Re: Necessity that bedding
Austin, Texas                   manufactured in Texas
                                for sale outside the
                                State comply with the
                                bedding stamp require-
                                ments of the Texas
Dear Dr. Cox:                   Bedding Act.

　　　　Your request for an opinion of this office
reads in part as follows:

　　　　"We should like to know if bedding
manufactured in Texas and sold outside
the State of Texas through wholesale and
retail commercial channels is required to
have affixed an adhesive stamp (tax stamp)
under the provisions of the Texas Bedding
Act.

　　　　"We believe that the wording of the
Act requires that any person who manufac-
tures, who renovates, or who sells or
leases any bedding covered by the provi-
sions of this Act should have an adhesive
stamp (tax stamp) affixed regardless of
the ultimate destination of the article."

　　　　Section 7 of Article 4476a, V.C.S. (Bedding
Act), provides in part:

　　　　"Sec. 7. (a). No person shall manu-
facture, renovate, sell or lease or have
in his possession with intent to sell or
lease in the State of Texas, any bedding
covered by the provisions of this Act, un-
less there be affixed to the tag required
by this Act by the person manufacturing,
renovating, selling or leasing the same,
an adhesive stamp prepared and issued by
this Department."

The language of Section 7 of Article 4476a clearly provides that bedding manufactured in Texas is required to have a stamp affixed regardless of where the bedding is to be sold. Therefore, we agree with you that bedding manufactured in Texas and sold outside Texas is required to have an adhesive stamp (tax stamp) affixed, if the statute does not violate the commerce clause of the United States Constitution (Art. 1 Sec. 8 cl. 3). Section 8 of Article I of the Federal Constitution provides in part:

"The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

". . .

"To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;"

Should it be considered that the regulations and fee charges incident to the regulation operates on manufacturing alone, it has been held that manufacturing is not a part of interstate commerce and consequently the prohibition of the Commerce Clause would not be applicable. In American Manufacturing Co. v. St. Louis, 250 U.S. 459 (1919), the city of St. Louis levied against manufacturers a tax imposed as a condition of a grant of a license to carry on a manufacturing business in that city, the amount of which was to be ascertained by the amount of sales of manufactured goods whether sold within or without the State. In upholding this tax the Court stated:

"In our opinion, the operation and effect of the taxing ordinance are to impose a legitimate burden on the business of carrying on the manufacturing of goods in that city; it produces no direct burden on commerce in the goods manufactured, whether domestic or interstate, and only the same kind of incidental and indirect effect as that which results from the payment of

property taxes or any other and general contri-
butions to the cost of government. It there-
fore does not amount to a regulation of inter-
state commerce. . . ."

See also Utah Power & Light Co. v. Pfast, 286
U.S. 165 (1932).

Considering next the effect of the regulation
should it be one on the selling of bedding; it has been
held that under the federal constitutional system, there
necessarily remains to States, until Congress acts, a
wide range for permissible exercise of power appropriate
to their territorial jurisdiction, even though interstate
commerce may be affected thereby. Breard v. City of
Alexandria, 341 U.S. 622 (1951.)

We have been unable to find any Federal Statute
regulating the manufacturing, renovating, selling or leas-
ing of bedding.

In Milk Control Board of Pennsylvania v.
Eisenberg Farm Products, 306 U.S. 346 (1937) the court
had before it a statute which regulated the sale of
milk and required a license of all persons in Pennsyl-
vania who were selling milk. The Court held that since
Congress had not legislated on this subject matter and
since only a small portion of the milk produced in the
state was shipped outside the state, the act was not a
burden on interstate commerce. Also in Townsend v.
Yeomans, 301 U.S. 441 (1937) a Georgia statute fixing
maximum charges for handling and selling leaf tobacco
was held not invalid as placing a burden on interstate
commerce though practically all of the tobacco grown in
the state of Georgia was shipped outside the state.

In H. P. Hood & Sons v. DuMond, 336 U.S. 525
(1949), the Court was considering a case where a distri-
butor of milk in Massachusetts sought a license for a
receiving station in New York enabling him to compete
with purchasers of milk in the area in New York State
where the receiving station was to be located. In up-
holding the right of the New York State Commissioner of
Agriculture and Markets to deny a license on the basis
that the area did not have an adequate supply to allow
another receiving station, the Court stated:

"Our decision in a milk litigation most relevant to the present controversy deals with the converse of the present situation. Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L. Ed. 1032, 101 L. R. A. 55. In that case, New York placed conditions and limitations on the local sale of milk imported from Vermont designed in practical effect to exclude it, while here its order proposes to limit the local facilities for purchase of additional milk so as to withhold milk from export. The State agreed then, as now, that the Commerce Clause prohibits it from directly curtailing movement of milk into or out of the State. But in the earlier case, it contended that the same result could be accomplished by controlling delivery, bottling and sale after arrival, while here it says it can do so by curtailing facilities for its purchase and receipt before it is shipped out. In neither case is the measure supported by health or safety considerations but solely by protection of local economic interests, such as supply for local consumption and limitation of competition. This Court unanimously rejected the State's contention in the Seelig case and held that the Commerce Clause, even in the absence of congressional action, prohibits such regulations for such ends.

"(1,2) The opinion was by Mr. Justice Cardozo, experienced in the milk problems of New York and favorably disposed toward the efforts of the State to control the industry. Hegeman Farms Corporation v. Baldwin, 293 U.S. 163, 55 S.Ct. 7, 79 L.Ed. 259; Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, concurrence at page 213, 55 S.Ct. 187, at page 193 79 L.Ed. 281; Mayflower Farms v. Ten Eyck, 297 U.S. 266, dissent at page 274, 56 S.Ct. 457, at page 459, 80 L.Ed. 675. It recognized, as do we, broad power in the State to protect its inhabitants against perils to health or safety, fraudulent traders and highway hazards even by use of measures which bear adversely upon interstate commerce."

Also see <u>Parker v. Brown</u>, 317 U.S. 341 (1943).

In view of the above authorities we believe that this small fee, which is incidental to the exercise of the State's police power to protect public health in the sale of bedding is not a burden on interstate commerce.

## SUMMARY

Section 7 of Article 4476a, V.C.S. requires that bedding manufactured in Texas and sold outside Texas have an adhesive stamp affixed.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

By

Bruce Allen
Assistant

Charles D. Mathews
First Assistant

BA:am