Jasen, J.
(dissenting). I cannot agree with the majority’s conclusion that the commissioner’s denial of a license to permit appellant to serve wholesale milk dealers in Richmond County did not offend the commerce clause of the United States Constitution. (Art I, § 8, subd 3.)
No one will deny the authority of each State to regulate, pursuant to its police power, intrastate business for the protection of its citizens’ health, safety, morals and general welfare, notwithstanding that such regulation effects an incidental burden upon interstate commerce. (Baldwin v G. A. F. Seelig, 294 US 511, 512.) Provided a State statute "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental”, the Supreme Court has recently observed, "it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.” (A & P Tea Co. v Cottrell, 424 US 366, 371-372, quoting Pike v Bruce Church, Inc., 397 US 137, 142.)
Clearly, however, before the balancing approach advocated by the court in A & P Tea Co. may be employed to determine the constitutionality of a State statute affecting interstate commerce, there must be a showing that the challenged statute effectuates a "legitimate local public interest”. While, as the majority correctly notes, the milk industry is an appropriate subject for regulation under the police power of the *231 State (Nebbia v New York, 291 US 502), distinction has long been made between State legislation designed to foster public health and safety, and legislation intended to insulate local inhabitants from unfavorable economic competition attributable to interstate commerce. (E.g., Hood & Sons v Du Mond, 336 US 525; Milk Bd. v Eisenberg Co., 306 US 346; Baldwin v G. A. F. Seelig, 294 US 511, supra.)
In this regard, the Supreme Court has on a previous occasion, in Hood & Sons v Du Mond (supra), held unconstitutional, as applied, the very same statutory provision at issue today. In so doing, the court made clear that a State may not enact legislation burdening interstate commerce under the guise of a health measure for the true purpose of suppressing competition. (336 US, at p 538, supra.) Yet, the majority seeks to distinguish this case upon the theory that the constitutional infirmity in Hood stemmed from the fact that the commissioner premised his license denial upon a finding that operation of an additional milk receiving plant at the requested location would occasion the reception of a lower volume of milk by existing area plants, resulting in a decrease in operational efficiency — an economic, rather than health-related, interest. In marked contrast, maintains the majority, stands the present case, in which the commissioner premised his license denial not upon fear of the possibly debilitating effect competition might work upon the milk industry, but upon concern for the consumer. This concern for the consumer is alleged to have been brought about by the nature of appellant’s business — the distribution of milk exclusively to supermarkets and wholesale outlets — which, in the commissioner’s judgment, would not contribute to a balanced milk distribution system. For this reason, the majority concludes that the commissioner’s decision was "not for the benefit of the dealers and distributors presently serving the market, but for the protection of the welfare of the consumers, in the public interest” (p 226).
I do not find this distinction persuasive. At the root of the commissioner’s rationale lies the basic fear that appellant’s entrance into the Richmond County milk market might, through competition, jeopardize the continued existence of milk distributors who service small volume wholesale customers, as well as making retail home deliveries necessary for consumer distribution. In my opinion, this reasoning constitutes nothing more than a subtle variant of the bootstrap *232 argument that regulation of competition — an impermissible local interest — will in itself contribute to health — a permissible local interest. Needless to say, the Supreme Court has consistently rejected this argument. (See, e.g., Hood & Sons v Du Mond, 336 US 525, 538, supra; Baldwin v G. A. F. Seelig, 294 US 511, 522-523, supra; Buck v Kuykendall, 267 US 307, 315-316.) Particularly appropriate is Baldwin v G. A. F. Seelig (supra, at pp 522-523), from which the majority quotes the following (at p 224): "The argument is pressed upon us, however, that the end to be served by the Milk Control Act is something more than the economic welfare of the farmers or of any other class or classes. The end to be served is the maintenance of a regular and adequate supply of pure and wholesome milk, the supply being put in jeopardy when the farmers of the state are unable to earn a living income. Nebbia v. New York, supra. Price security, we are told, is only a special form of sanitary security; the economic motive is secondary and subordinate; the state intervenes to make its inhabitants healthy, and not to make them rich. On that assumption we are asked to say that intervention will be upheld as a valid exercise by the state of its- internal police power, though there is an incidental obstruction to commerce between one state and another. This would be to eat up the rule under the guise of an exception.”
In my opinion, this admonition is equally applicable to the present case. To hold section 258-c of the Agriculture and Markets Law constitutional, as applied would be to burden interstate commerce to effectuate a primarily economic objective under the guise of a health measure. For this reason, I would reverse the judgment of the Appellate Division and declare section 258-c of the Agriculture and Markets Law unconstitutional, as applied.
Chief Judge Breitel and Judges Gabrielli, Wachtler, Fuchsberg and Cooke concur with Judge Jones; Judge Jasen dissents and votes to reverse in a separate opinion.
Judgment affirmed.