## Milk Control Commission, Appellant, *v.* Penn Fruit Company.

Argued September 25, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Morey M. Myers,* Chief Counsel, with him *William Steerman,* Assistant Attorney General, and *David*

*Stahl,* Attorney General, for Milk Control Commission, appellant.

*Owen B. Rhoads,* with him *William H. Lowery, Arlin M. Adams,* and *Dechert, Price & Rhoads,* and *Schnader, Harrison, Segal & Lewis,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 19, 1963:

The Milk Control Commission appeals from the final decree in equity dismissing its complaint after hearing and adjudication. The Commission invoked the provisions of the Milk Control Law, Act of April 28, 1937, P. L. 417, as amended, 31 P.S. §700j-101 et seq., seeking to enjoin the defendants, from purchasing and receiving, handling, selling or distributing, or in any other way, handling milk in the capacity of a milk dealer as defined by the Milk Control Law, without first obtaining a milk dealer's license from the Milk Control Commission, or, by operating in such a manner as to be exempt from such licensing provision as is provided in Section 402 of the Milk Control Law.

The Commission's complaint avers that the defendants are not and never have been licensed as milk dealers, and milk is sold to consumers from the corporate defendant's stores in and about the City of Philadelphia, the milk having been obtained elsewhere than from a milk dealer licensed to sell and deliver milk in Pennsylvania. It is further averred that it is a requirement of Section 401 of the Milk Control Law that a milk dealer, as defined by the Act, shall not sell or distribute milk within the Commonwealth without a license, however, the Commission may by official order exempt stores from the license requirements of the Act, and shall exempt stores selling milk, all of which has been purchased or acquired from a licensed milk dealer or handler. The complaint also avers that the defendant's acts and practice of purchasing and ob-

taining milk from sources other than a licensed dealer and selling the milk to customers at its stores constitutes a violation of Sections 401 and 402 and other sections of the Act; and that the practices are injurious to trade and commerce by demoralization of the price structure of milk to such an extent as to interfere with an ample supply of milk for the inhabitants of the Commonwealth.

The defendants filed an answer to the complaint. The parties in lieu of the testimony of appropriate witnesses, filed the following stipulation of facts:

"1. The plaintiff is the Milk Control Commission of the Commonwealth of Pennsylvania, an administrative agency of said Commonwealth created by the Milk Control Law (31 P.S. §700j-101 et seq.), and has brought this action pursuant to section 1004 of said Law (31 P.S. §700j-1004).

"2. The corporate defendant is Penn Fruit Company, Inc. (herein Penn Fruit) and the individual defendants are officers, directors, supervisors or managers of Penn Fruit or its stores, as named in the caption and paragraphs 4, 5 and 6 of plaintiff's complaint.

"3. Penn Fruit is a Pennsylvania corporation with its principal office in Philadelphia, Pennsylvania, and it operates grocery stores in Pennsylvania, New Jersey, Delaware, Maryland and New York.

"4. Penn Fruit purchases milk sold in its stores in and around Philadelphia, and listed in the caption of plaintiff's complaint, from Pennbrook Milk Company in Pennsylvania and from National Dairy Products Corporation (herein Sealtest) at its plant in Camden, New Jersey.

"5. The milk purchased by Penn Fruit from Sealtest's Camden plant has been delivered to Penn Fruit at said plant and has been billed to Penn Fruit by Sealtest at the prices established by the Office of Milk Industry of the State of New Jersey.

"6. Penn Fruit takes delivery of and title to the milk at Sealtest's plant in Camden in trucks owned by Penn Fruit and operated by Penn Fruit's employees, and delivers the milk in said trucks directly from Sealtest's Camden plant to Penn Fruit's stores referred to in paragraph 4 hereof.

"7. No contention is made by the Pennsylvania Milk Control Commission in this action that Penn Fruit sells milk in its stores, referred to in paragraph 4 hereof, at less than the prices established by the Commission for such sales.

"8. Sealtest is licensed as a milk dealer by the appropriate authorities in the Commonwealth of Pennsylvania and in the State of New Jersey. On May 5, 1961 the Milk Control Commission of the Commonwealth of Pennsylvania issued milk dealer's license number 1002 to Sealtest at its division office in Philadelphia, which division operates the Camden plant referred to in paragraph 4 hereof.

"9. During the months of April through August, 1961, approximately 29 percent of the raw milk processed in said Camden plant came from producers in New Jersey and the balance came from producers in Maryland, Delaware and Pennsylvania. Of the approximately 71 percent of the raw milk which did not come from New Jersey, the greatest percentage came from producers in Maryland and a relatively small percentage came from producers in Pennsylvania.

"10. Prices paid to all producers, including Pennsylvania producers, for raw milk purchased by Sealtest for processing at its Camden plant are regulated by Federal Order 110 (Wilmington), promulgated by the United States Department of Agriculture, Agriculture Marketing Service, Dairy Division.

"11. During the months of April through August, 1961, approximately 61 percent of the milk processed in said Camden plant went to New Jersey subdealers,

stores and consumers and the balance went to sub-dealers, stores and consumers in Maryland, Delaware and Pennsylvania.

"12. With the approval of the Pennsylvania Milk Control Commission, for several years milk processed by Sealtest in its Camden plant has been sold, and is still being sold, by Sealtest at said plant to Pennsylvania dealers, who pay less than the Pennsylvania Milk Control Commission's minimum prices for such purchases and who in turn resell the milk to stores and consumers in Pennsylvania.

"13. The milk sold by Sealtest which is processed at its Camden plant is wholesome and meets the health standards set by the Commonwealth of Pennsylvania.

"14. On September 5, 1961 representatives of the Pennsylvania Milk Control Commission stated that the Commission would not issue dealers' licenses to stores, including Penn Fruit, in the foreseeable future."

The provisions of the Milk Control Law relevant to this litigation are: Section 103, 31 P.S. §700j-103: " 'Milk dealer' or 'handler' means any person, including any store . . . who purchases or receives or handles . . . milk within the Commonwealth, for sale, . . . ."

Section 401, 31 P.S. §700j-401: "Except as herein otherwise specifically provided, a milk dealer . . ., as defined in this act, shall not buy or handle milk, whether as a broker, factor, bailee, consignee, or otherwise, . . . for storage, consignment, brokerage, manufacture, processing, distribution, or sale within or without this Commonwealth, or . . . sell or distribute milk within. this Commonwealth, unless such dealer or handler be duly licensed as herein provided; . . . ."

Section 402, 31 P.S. §700j-402: ". . . The commission may, by official order, exempt stores, or any class thereof, from the license requirements provided by this act, and shall exempt stores selling milk, all of which

has been purchased or acquired from a licensed milk dealer or handler."

Section 1202, █ 31 P.S. §700j-1202: "No provision of this act shall apply, or be construed to apply, to foreign or interstate commerce, except in so far as the same may be effective in accordance with the Constitution of the United States and the laws of the United States enacted pursuant thereto."

The Chancellor made the following conclusions of law:

"1. The corporate defendant, in purchasing milk from a Pennsylvania licensed dealer, taking title to that milk in New Jersey where delivery is made, transporting the milk in containers in its own trucks into Pennsylvania, and reselling the same in its stores in and about Philadelphia, is engaged in interstate commerce.

"2. By construing the Milk Control Law, Act of April 28, 1937, P. L. 417, as amended, so as to require the licensing of Penn Fruit Company, Inc. (or its officers and employees) in selling the milk acquired in the manner aforesaid, the plaintiff—Pennsylvania Milk Control Commission—proposes to create a discriminatory burden on interstate commerce, since stores in Pennsylvania acquiring their milk in Pennsylvania from licensed Pennsylvania dealers are statutorily exempt from licensing.

"3. The statute, so construed, discriminates against interstate commerce, contrary to the provisions of the Commerce Clause, Article I, §8 of the Federal Constitution.

"4. Penn Fruit Company, Inc., in the purchase of milk from a duly licensed Pennsylvania dealer for resale in its stores in Pennsylvania, is exempt from licensing by virtue of §402 of the Milk Control Law, and this exemption is not removed by virtue of the fact that the milk is delivered in New Jersey, and trans-

ported by defendant in its trucks for a sale in Pennsylvania in its various stores.

"5. The Commission's proposal that this interstate commerce be forbidden would amount, if carried out, to a direct and unconstitutional interference with interstate commerce, and any administrative action interfering with such commerce would be unconstitutional.

"6. Any Commission action in denying the corporate defendant's right to continue these operations in interstate commerce violates Article I, §8 of the Federal Constitution.

"7. Since plaintiff's proposal to forbid and impede interstate commerce is in violation of our Federal Constitution, the request for equitable relief in this case must be denied."

Penn Fruit Company purchases the milk sold in and around Philadelphia from Pennbrook Milk Company and from National Dairy Products Corporation, known herein as Sealtest. The Commission does not contend that any other milk is sold by Penn Fruit, and both these suppliers to Penn Fruit are Pennsylvania licensed dealers. The Commission agrees that Pennbrook and Sealtest are licensed. However, the Commission contends that the milk purchased from Sealtest at its Camden, New Jersey plant is not milk from a Pennsylvania licensed dealer. The parties agree that "Sealtest is licensed as a milk dealer by the appropriate authorities in the Commonwealth of Pennsylvania and in the State of New Jersey. On May 5, 1961 the Milk Control Commission of the Commonwealth of Pennsylvania issued milk dealer's license number 1002 to Sealtest at its division office in Philadelphia, which division operated the Camden plant referred to in paragraph 4 hereof [of stipulation of facts]".

The license is issued to the Company and not to the plant of the Company. There is scarcely any doubt

that if Sealtest delivered the milk in its own conveyances to Penn Fruit in Philadelphia from the Camden plant the Commission would not complain. The Commission, herein, is contending that milk coming from the Camden plant of Sealtest purchased at the Camden plant by Penn Fruit and conveyed in its own vehicles and sold in and around Philadelphia is not milk from a licensed Pennsylvania dealer within that provision of Section 402 of the Act which says the Commission "shall exempt stores selling milk, all of which has been purchased or acquired from a licensed milk dealer or handler."

It would be difficult to give such interpretation to this provision of the Statute as it would require us to ignore the plain words of the Act. Statutory Construction Act, Act of May 28, 1937, P. L. 1019, §52, 46 P.S. §552; *Hotel Casey Co. v. Ross,* 343 Pa. 573, 23 A. 2d 737 (1942).

The chancellor properly held the law to be that "Penn Fruit Company, Inc., in the purchase of milk from a duly licensed Pennsylvania dealer for resale in its stores in Pennsylvania, is exempt from licensing by virtue of §402 of the Milk Control Law, and this exemption is not removed by virtue of the fact that the milk is delivered in New Jersey, and transported by defendant in its trucks for a sale in Pennsylvania in its various stores."

It is not necessary in the decision of this case to consider any constitutional questions. *Hotel Casey Co.,* supra.

Decree affirmed. Costs on appellant.