**SYLVAN SEAL MILK, INC.**

v.

**MILK CONTROL COMMISSION OF the COMMONWEALTH OF PENNSYLVANIA.**

Civ. A. No. 42044.

United States District Court
E. D. Pennsylvania.

Feb. 20, 1967.

Robert P. Frankel, Israel Packel, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiff.

Anthony W. Novasitis, Jr., Asst. Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., for defendant.

Roland Morris, Duane, Morris & Heckscher, Philadelphia, Pa., Willis F. Daniels, Daniels, Swope & Snyder, Harrisburg, Pa., for intervenors.

Before HASTIE, Circuit Judge, and VAN DUSEN and DAVIS, District Judges.

SUR MOTION FOR PRELIMINARY INJUNCTION AND PROOFS.

PER CURIAM.

The plaintiff, a processor of milk and other dairy products, has instituted this action to enjoin the defendant from the operation or enforcement of any minimum prices with respect to the sale of milk by the plaintiff to stores and sub-

dealers on the ground that continued operation or enforcement of such prices is causing the plaintiff irreparable harm and is in violation of the Fourteenth Amendment of the Constitution of the United States.

Pursuant to 28 U.S.C. §§ 2281 and 2284, a three judge court has been convened. The issue presented at this time is whether or not to grant the plaintiff's motion for a preliminary injunction. After a hearing and argument, the court makes the following:

## FINDINGS OF FACT

1. The defendant, the Milk Control Commission of the Commonwealth of Pennsylvania ("Commission"), is a state administrative agency created by the Milk Control Law, Act of April 28, 1937, Pa.Stat.Ann. tit. 31 § 700j–101 et seq. and maintains an office in the City of Philadelphia.

2. The plaintiff, Sylvan Seal Milk, Inc. ("Sylvan Seal") is a Pennsylvania Corporation which has been engaged in the business of processing milk and other dairy products for over thirty years in the City of Philadelphia.

3. Sylvan Seal's sales have been exclusively to stores and subdealers, and primarily in half-gallon containers.

4. The Commission under § 802 of the Milk Control Law, Pa.Stat.Ann. tit. 31 § 700j–802, fixes minimum prices for sales to stores and subdealers in the various milk marketing areas established by the Commission throughout the Commonwealth of Pennsylvania.

5. In the Philadelphia milk marketing area, officially designated as Area No. 1 and 1A, the minimum price into the store for a half-gallon of standard milk is 51½ cents, but a quantity discount of up to 6 cents per half-gallon is authorized. See Milk Control Commission official General Orders No. A–632 and A–633 effective March 20, 1964, as amended by Official General Orders No. A–678 and A–679, effective July 7, 1966.

6. The full discount price into-the-store of 45½ cents per half-gallon is authorized for 300 or more half-gallons per single delivery of standard milk. See Milk Control Commission Official General Orders No. A–632 and A–633 and A–678 and A–679 supra.

7. Sylvan Seal can sell standard milk at a fair profit at its platform for substantially less than the above fully discounted price of 45½ cents per half-gallon now permitted by the Commission.

8. About 45% of all standard milk sold in the Philadelphia area to the consumer is sold in stores while the remaining 55% is sold by home deliveries.

9. Four supermarket chains, Acme, A & P, Food Fair, and Penn Fruit, in the approximate proportions of 23.8, 19.8, 11.8 and 8.8, sell, in the aggregate, about 65% of all milk sold in stores in the Philadelphia area or about 30% of all standard milk sold to the consumer.

10. Acme, Food Fair, and Penn Fruit are acquiring their milk requirements for sale in their Pennsylvania stores, outside of the Commonwealth of Pennsylvania, namely in the states of New Jersey and Delaware at a cost of less than 41½ cents per half-gallon which is the applicable New Jersey minimum price.

11. In acquiring its milk outside of the Commonwealth, Acme, Food Fair, and Penn Fruit are not subject to the into-the-store minimum price controls fixed by the Commission.

12. A & P is now operating its own milk processing plant so that it is not subject to any into-the-store price control.

13. Less than 1% of the milk sold in the Philadelphia area is sold to subdealers.

14. Although the Commission has been aware since 1965 that chain supermarkets in the Philadelphia marketing area were obtaining delivery or had plans to obtain delivery of their milk supply outside of Pennsylvania in order to avoid the into-the-store minimum price fixed by the Commission and although it held hearings directed to the problem in April and May 1966 after much informal discussion with the plain-

tiff, it continued its general price hearing scheduled for September 1966, has still not scheduled such a hearing, and in December 1966 informed the plaintiff that it would enforce its controls if the plaintiff attempted to compete for business by selling to stores or subdealers at its platform in Philadelphia at prices below the control level.

15. Preliminarily, it is determined that the following changes in the milk industry have taken place in the course of the past 30 years since the enactment of the Milk Control Law, 31 Pa.Stat.Ann. tit. 31 § 700j–101 et seq. to wit:

(a) the number of retail stores has greatly decreased, there having been a significant transition from small stores to giant supermarkets.

(b) the number of deliveries to stores has decreased and conversely, the size of deliveries has increased.

(c) the percentage of milk sold in stores in the 1930's was only about 10%, but today it has increased to about 45% of the total milk sold.

(d) as a result of modern refrigeration, bulk storage tanks and tank cars, and other scientific improvements, milk is no longer as perishable as it was in the 1930's.

(e) in recent years state and local health authorities have increased and improved their supervision of milk as a food commodity, such scrutiny being in addition to that exercised by the Commission under the Milk Control Law, Pa.Stat.Ann. tit. 31 § 700j–101 et seq.

(f) when the General Assembly first enacted the Milk Control Law, the Pennsylvania farmer was suffering from the effects of the great depression of the early 1930's, but today his economic situation is improved, and generally he operates a larger, more efficient, more mechanized, and more sanitary farm.

(g) the number of milk processing plants has decreased, whereas their size and capital investment has greatly increased.

16. The gravamen of the legislative purpose of the Milk Control Law, Pa.Stat. Ann. tit. 31 § 700j–101 et seq. as found in its preamble, is to protect the sanitary condition of milk, to insure the farmer a fair price for his milk from the dealer, to protect the farmer against inequitable payment practices of dealers, and to prevent "fraud and imposition" upon consumers and farmers.

17. Approximately 65% of the milk sold by stores in the Philadelphia area is acquired free from existing controls of the Commission over the prices to stores and subdealers, and the temporary suspension of such controls over the plaintiff's sales of at least 300 half-gallons per single delivery in Areas 1 and 1A, would not defeat the other existing controls over consumer prices and prices paid to the farmer.

18. As a result of its compliance with the price controls set by the Commission, Sylvan Seal has continually lost business and between August 1966 and January 1967 has had to reduce the number of its milk employees from 328 to 69 and its payroll from $203,495 to $37,386 per month.

19. As a result of its compliance with the price controls set by the Commission, Sylvan Seal has lost milk sales of upwards of $350,000 a week and is sustaining net losses of approximately $20,000 a week in its milk business.

20. Sylvan Seal's net sales of milk in January 1966 were $1,599,809 but in January 1967 had fallen to $99,576.

21. A continuation of Sylvan Seal's losses for an additional period of six weeks is likely to compel it to close its milk business and to result in loss of the good-will incident to it as a going business.

22. Sylvan Seal is now unable to obtain new business from potential large quantity purchasers in the Philadelphia area because such purchasers are unwilling to buy milk at the prevailing minimum into-the-store and subdealer prices fixed by the Commission as

long as large quantities of milk are available below those prices from neighboring states.

23. The plaintiff is suffering immediate and irreparable harm as a result of the Commission's minimum into-the-store price controls.

## CONCLUSIONS OF LAW

■ 1. The Commission has no control over into-the-store prices where the stores take delivery outside of the Commonwealth of Pennsylvania or process the milk themselves. Milk Control Commission v. Penn Fruit Company, 410 Pa. 242, 188 A.2d 705 (1963).

2. In Pennsylvania there are health and quality controls by regulation other than under the Milk Control Act. (An Act defining milk and its derivatives, prohibitng ts adulteraton and regulating its labeling, sale and serving and imposing powers and duties on the Department of Agriculture, Pa.Stat.Ann. tit. 31 § 520–1 et seq.; and Act to safeguard human health and life by providing for the issuance of permits to and regulation of persons and entities selling milk and milk products and imposing duties on the Secretary of Agriculture, Pa.Stat.Ann. tit. 31 § 645 et seq.; Commonwealth ex rel. Allegheny County v. Shenot, 207 Pa. Super. 351, 218 A.2d 76 (1966).

3. Pennsylvania has an Unfair Sales Act. Pa.Stat.Ann. tit. 73 § 213 prohibits the sale of any commodity at less than cost with the intent of unfairly diverting trade from or otherwise injuring a competitor or with the result of deceiving any purchaser or prospective purchaser, substantially lessening competition, unreasonably restraining trade or attempting to create a monopoly in any line of commerce.

4. Federal controls exist to protect the farmer, with respect to the price which must be paid him, as to any milk which is marketed in the Philadelphia area.

Insofar as the foregoing do not cover the Findings of Fact and Conclusions of Law requested by plaintiff, such requests (Document 12) are denied.

## DISCUSSION

■ The plaintiff has not established that there is a substantial question that the Pennsylvania Milk Control Law, 31 P.S. § 700j–101 ff., as a whole constitutes a violation of the Fourteenth Amendment to the United States Constitution or that Pennsylvania lacks constitutional authority to provide for minimum wholesale prices covering sales to stores and sub-dealers. Cf. Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316–319, 60 S.Ct. 517, 84 L.Ed. 774 (1940); See Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Milk Control Board of Pa. v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752 (1939); Milk Control Comm. v. Battista, 413 Pa. 652, 198 A.2d 840 (1964), cert. den. 379 U.S. 3 (1964). Furthermore, the preliminary injunction as here requested would not preserve the status quo as it has existed since 1964. (Commission Orders A632 and A633). See Warner Bros. Pictures v. Gittone, 110 F.2d 292 (3rd Cir. 1940). Plaintiff is entitled to reconsideration by defendant of the prices challenged by its motion as promptly as is feasible, particularly of the minimum wholesale prices for into-the-store sales in Areas 1 and 1A prescribed in Schedule 1 at page 3 of its Orders A678 and A679 where such prices are subject to the maximum quantity discounts prescribed in Provision 5 of Section E of Orders A632 and A633. If such prompt reconsideration, after the hearing contemplated by paragraph 9 of the Stipulation filed on February 16, is not given by the Commission, plaintiff may reapply to the court for further relief.

## ORDER

And now, this 20th day of February 1967, upon consideration of the foregoing Findings of Fact, Conclusions of Law, and Discussion, it is hereby Ordered that the plaintiff's Motion for a Preliminary Injunction be and and the same is Denied.