**SYLVAN SEAL MILK, INC.**

v.

**MILK CONTROL COMMISSION OF the COMMONWEALTH OF PENN-SYLVANIA.**

Civ. A. No. 42044.

United States District Court
E. D. Pennsylvania.

June 20, 1967.

Israel Packel, Bernard Frankel, Robert P. Frankel, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiff.

Anthony W. Novasitis, Jr., Asst. Atty. Gen. Commonwealth of Pennsylvania, Harrisburg, Pa., for defendant. Roland Morris, Duane, Morris & Heckscher, Philadelphia, Pa., for intervenors.

Willis F. Daniels, Harrisburg, Pa., for Harrisburg Dairies et al.

Before HASTIE, Circuit Judge, and VAN DUSEN and DAVIS, District Judges.

## OPINION

DAVIS, District Judge.

On February 20, 1967, D.C., 264 F.Supp. 1001 this three judge court

denied the plaintiff's motion to enjoin the defendant from the operation or enforcement of any minimum sale prices of milk to stores and subdealers. The plaintiff, a processor of milk and other dairy products, had contended that the establishment of these prices was causing it irreparable harm and was in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

The court held that there was no substantial constitutional question as to the validity of the Pennsylvania Milk Control Law, Pa.Stat.Ann. tit. 31 § 700j–101ff (hereinafter referred to as "the Act") as a whole and that Pennsylvania possessed constitutional authority to establish minimum wholesale prices covering sales to stores and subdealers.

In denying the preliminary injunction, however, the court stated that the plaintiff could reapply for further relief after the results of a price hearing already scheduled by the defendant were published. After the hearing, the Pennsylvania Milk Control Commission on May 22, 1967 issued Official General Orders No. A–688 and No. A–689 which completely revised minimum wholesale milk prices in areas I and I–A, the Philadelphia and suburban Philadelphia milk marketing areas.

The plaintiff has now reapplied for preliminary injunctive relief on the ground that the new minimum wholesale price schedule as set forth in General Orders No. A–688 and No. A–689 violates the United States Constitution. It contends that the prices established are unconstitutional, because (1) a great bulk of milk brought into Pennsylvania stores is not subject to price control as to the cost to stores; (2) the prices set are too high to enable the plaintiff to compete with out-of-state competition; and (3) the prices are arbitrary and capricious in that they prevent plaintiff from selling to smaller wholesale customers at the much lower price available to larger customers.[1]

Under the recent general orders, the minimum wholesale price for standard milk with 4% butterfat or less is 43.2 cents per half gallon, a price that includes the 20% discount where physical possession of the milk is taken by the purchaser at the plant and where the quantity is at least 200 quarts. The Orders also provide for a 29% discount or a price of 38.34 cents per half gallon where the minimum sale shall be equivalent to 2,000 quarts.

The present minimum wholesale prices below which processing dealers in and around Philadelphia may not sell milk to subdealers, retail stores, hotels, restaurants and similar establishments, went into effect May 29, 1967, less than a month ago. In its new price order that is now attacked, the Commission has undertaken to give substantial relief to Sylvan Seal which had complained earlier that the disparity between now superseded Pennsylvania minimum wholesale prices and the prevailing and permitted selling and processing prices in nearby New Jersey and Delaware had caused Sylvan Seal, a regulated Philadelphia processor and wholesale seller dealing principally with large chain stores, to lose almost all of its business to out-of-state competitors. Unquestionably, before the adoption of the May 29 price order the plaintiff's losses to these competitors had been all but catastrophic. It faced the prospect of soon being forced out of business.

The plaintiff complained to the Commission that the earlier price scheme made no provision for sales by a processing wholesale dealer at a substantial discount to stores and subdealers that would be willing to pick up their large orders at the wholesale seller's platform. To remedy this situation Sylvan Seal proposed that a minimum price of 37 cents per half gallon be established for such large transactions. Other proces-

---

1. The plaintiff also makes the additional argument that the failure to establish a price for processing milk is a violation of § 802 of the Act. See Provision 7 of § E of former Orders A–678 and A–679.

sors suggested minimum prices from 38½ cents to 39½ cents per half gallon for such large platform sales. In suggesting a 37 cent minimum, Sylvan Seal admitted at the hearing before the Commission that it cannot make a profit on its present volume of business at that price. However, if it can regain about half of the large volume of business it lost in recent years, it believes it can sell profitably at 37 cents. Other processing wholesalers, particularly smaller ones, are understandably less optimistic as to their ability to sell at 37 cents.

■ Despite the minimum prices set by the Commission, we find that the plaintiff is not prevented by law[2] from implementing the same sort of economic and business arrangements that some of the chain stores and milk processors are using with New Jersey processors in lawful avoidance of the wholesale selling prices by the defendant. We accept the testimony of Mr. Maurice Martin, Secretary to the Milk Control Commission that it has no ruling which would prohibit stores from obtaining licenses under § 403 of the Milk Control Act so that they could have their milk processed by Sylvan Seal and thus avoid the Commission's minimum wholesale prices to stores.

■■ In addition we must consider that one of the paramount reasons for economic regulation in the form of price control is to prevent unfettered competition. The test used by the Commission is to give the processors a reasonable return based upon a cross section of the industry. The Commission neither takes the most efficient nor the least efficient processor as the standard. It begins with the average normally efficient dealer in an effort to protect the dealers as a group. Price regulation by its very nature is not an exact science, and some businesses are helped greatly while some are hindered. Yet, the Commonwealth has a right to promote the general good

over the individual good in the sphere of economic regulation. So long as the pricing structure is not arbitrary, capricious, and unreasonable, we have no power to strike it down as unconstitutional, no matter what our position might be if we had to pass on it as legislators. Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

In the present case, the Milk Control Commission took testimony over a four day period. They heard seventeen witnesses and received into evidence some fifty-seven documents. In determining the platform prices to be paid to processors here, the Commission took many factors into consideration. It weighed the return from operations; the return before taxes; the return after taxes; the increase in labor and other operating costs. It also took cognizance of the fact that some processors distribute milk in areas outside of Pennsylvania at lower prices than are set in this state. The Commission's price structure was designed to give the average normally efficient processor the following returns:

| | |
|---|---|
| From operations | 4.32% |
| Before taxes | 4.27% |
| After taxes | 2.38% |
| Net Worth | 8.61% |
| Employed capital | 8.45% |

■ The Commission received a great deal of evidence concerning the establishing of the platform pricing system. The witnesses did not express unanimity of opinion although they did agree on the need for such a price structure. The Commission has taken into consideration that delivery to the platform rather than to the customer's place of business will eliminate an extra expense as far as the processor is concerned and that such savings ought to be passed on to the purchaser in the form of lower prices. It has also recognized that a great number of wholesale buyers who handle large volumes of milk have pre-

---

**2.** We are unable to conclude that the failure of the Commission to prescribe a price for processing the milk of others is a violation of either § 802 of the Act or of the purposes of the Act.

viously been purchasing their milk outside of the Commonwealth, and in establishing special bulk platform prices set forth at the beginning of this opinion, it hopes to reverse this trend. At the hearing before this court, the plaintiff has failed to show that the dividing line of 2000 quarts between the 20% and 29% discount is arbitrary. This extra discount for very large sales is certainly not unreasonable. Decreased costs per unit, and increased credit rating of the larger purchasers provide a reasonable basis for the scale the Commission has established for minimum wholesale prices of milk sold at the platform.

The law and policy of Pennsylvania require the Commission to fix minimum wholesale prices in the light of all relevant considerations, including the needs and capabilities of the average reasonably efficient dealer, as determined by the experience of a representative cross-section of the trade. Thus, the newly established 38.34 cent price represents an attempt to do justice to a group of which Sylvan Seal is not necessarily a typical member. If, on the one hand, a lower price would make Sylvan Seal's business profitable, as it hopefully predicts, the Commission could reasonably conclude on the other hand that such a price was likely to deny other reasonably efficient dealers a fair profit. The Commission had to seek an adjustment in the interest of all concerned, and it made that adjustment rather close to Sylvan Seal's request and at a figure lower than other processors considered adequate.

■ The 38.34 cent price is also rather close to New Jersey and Delaware prices. It is well below the comparable minimum prices for sales to subdealers in New Jersey. It is also rather close to, but somewhat higher than, the prices which have been obtainable through unregulated sales heretofore made to large Philadelphia stores in nearby Delaware. However, Philadelphia retailers who send large trucks to Delaware to pick up milk at Delaware platforms must bear the cost of transportation to Philadelphia and, in some cases, the cost of temporary storage here and reloading on smaller vehicles for redistribution to individual retail outlets. All circumstances considered, we think it has not been established that the 38.34 cent Philadelphia price is not fairly competitive with purchases that can be made at a Delaware platform for Philadelphia use. Necessarily, we have had such a brief experience with the new Philadelphia price structure that its competitive consequences cannot be predicted with confidence. The most that Sylvan Seal has been able to show, through the candid testimony of its president, is that it is trying to negotiate new contracts at the new 38.34 cent minimum and that it is far from confident that these efforts will succeed.

■ The Commission's concern has focused on the Pennsylvania milk industry from the farmer to the consumer. While it may attempt to protect Pennsylvania processors from and help them to compete with out-of-state businesses, it must also and has in fact considered the price structure among this state's milk handlers inter- se. Simply because neighboring states may set different prices or have no price controls at all does not require the Commonwealth to abandon its own price system. It seems self-evident that conditions and goals may vary from state to state and locality to locality.

■ In our opinion of February 20, 1967, we found no substantial constitutional question as to the validity of The Pennsylvania Milk Control Law. Sylvan Seal Milk, Inc. v. Milk Control Commission, 264 F.Supp. 1001, 1005 (E.D.Pa. 1967). We now conclude that there is no substantial constitutional question as to the validity of its present pricing structure for Areas I and I–A as set forth in General Orders No. A–688 and A–689. In light of the Commission's purpose to avoid unfettered competition, to protect the state's milk industry, and to promote the public welfare by seeing that the processors in general receive

a fair price for their milk, we cannot say that the structure promulgated on May 22, 1967, is arbitrary or unreasonable. See Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Milk Control Commission v. Battista, 413 Pa. 652, 198 A.2d 840, cert. denied 379 U.S. 3, 85 S.Ct. 75, 13 L.Ed.2d 22 (1964); Rohrer v. Milk Control Commission, 322 Pa. 257, 186 A. 336 (1936).

It is also noteworthy that the serious losses that Sylvan Seal has already incurred, as heretofore found by this court, resulted, not from the new price structure, but from the substantially higher minimum price structure of past years which the present price order supersedes. In the past Sylvan Seal has sought to do business almost exclusively with very large customers. Indeed, in its most recent successful years almost its entire production was sold to two large chain stores. One of these customers found it more profitable to establish its own processing plant and, therefore, stopped buying from the plaintiff. There is no reason to anticipate that an order of this court suspending minimum prices would regain that business for Sylvan Seal. The other large former customer is now purchasing its own raw milk and having it processed in New Jersey for a negotiated contract price. Whether either the new 38.34 cent minimum, or for that matter the 37 cent minimum which Sylvan Seal requested, will enable it to regain this business on a profitable basis is speculative.

The remedy sought by the plaintiff is a far reaching one. It seems clear to us from a review of the Commission's findings and the evidence presented to us, that the granting of a preliminary injunction in this situation could easily disrupt the pricing structure and cause serious harm to the other smaller processors in Areas I and I–A, if not to the entire milk industry. Aside from these two large former customers, the likely sources of new business for Sylvan Seal are the customers now served by other Pennsylvania processors. In fixing minimum wholesale prices, the Commission was entitled to give great weight to the risk that such processors might not be able to meet the prices Sylvan Seal would offer in an unrestricted market or if the minimum price should be reduced to 37 cents. It has already been pointed out that the policy of Pennsylvania is to establish a price structure under which normally efficient processors of various types and sizes may compete equitably. If one processor suffers under this state's scheme and policy, others may suffer in an unregulated or differently regulated market. All relevant interests considered, plaintiff has not established that Pennsylvania's choice among alternatives has been unreasonable, especially when any choice would be harmful to someone.

For all these reasons, we think it is a sound exercise of discretion to deny the present application for a temporary injunction.

Plaintiff's resubmitted motion for a preliminary injunction denied.