**UNITED DAIRY FARMERS COOPERA-TIVE ASSOCIATION, Plaintiff,**

v.

**MILK CONTROL COMMISSION OF the COMMONWEALTH OF PENNSYLVA-NIA and its chairman, J. Lin Huber, et al., Defendants.**

Civ. No. 69-235.

United States District Court, M. D. Pennsylvania.

April 13, 1971.

Tempest & Simmons, Monongahela, Pa., for plaintiff.

William C. Sennett, Atty. Gen., and Charles M. Guthrie, Asst. Atty. Gen. of Pennsylvania, Harrisburg, Pa., for defendants.

Daniels & Swope, Harrisburg, Pa., for Aupke's Dairy, Pittsburgh, Pa., and others (37 firms engaged in the processing and distribution of milk products in the Com. of Pa.), as amici curiae.

Before HASTIE, Chief Judge, and SHERIDAN and NEALON, District Judges.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

### PER CURIAM.

The plaintiff, United Dairy Farmers Cooperative Association, has instituted this action to enjoin the defendants, The Pennsylvania Milk Control Commission,[1] and its members, and the Attorney General of Pennsylvania,[2] from imposing certain sanctions by reason of plaintiff's sale of milk at retail prices which are al-

---

1. Now known as the "Milk Marketing Board."

2. At the time that this action was instituted William Sennet was the Attorney General. He has been succeeded by J. Shane Creamer who has been substituted as a party defendant in accordance with Rule 25(d) of the Federal Rules of Civil Procedure.

legedly lower than those established by General Order No. A–687 issued by the Commission pursuant to the Pennsylvania Milk Control Law,[3] 31 P.S. § 700j–101ff.

The complaint alleges that prior to November 15, 1967, and up to the time that the complaint was filed,[4] the Commission set the minimum retail price for each one gallon of Class I fluid milk (3.5 butterfat) at $1.06 per gallon and at $.54 per half gallon in accordance with General Order No. A–687; that plaintiff, through the use of profit dividends,[5] enabled consumers to purchase milk at retail prices which were $.15 per gallon and $.08 per half gallon less than the prices prescribed by General Order No. A–687; that this is in keeping with the preamble to the Milk Control Law which states that the law was promulgated to protect consumers from paying excessive prices for milk; that as a result, the Commission did not renew plaintiff's milk dealer's license for the period May 1, 1968, to April 30, 1969, but instead issued a citation on plaintiff to show cause why the Commission should not refuse to grant plaintiff a license for selling milk at prices less than mandated by General Order No. A–687; and that General Order No. A–687 violates the fourteenth amendment of the United States Constitution as applied to plaintiff because it serves only to protect milk dealers from lawful competition from plaintiff, thereby being detrimental to the public welfare and not in keeping with the purpose of the law, since the public is compelled to pay excessive prices for milk. Plaintiff prays that General Order No. A–687 be declared null and void and that defendants be enjoined from further enforcement of it,[6] and requested that a three judge court be convened pursuant to 28 U.S.C.A. §§ 2281 and 2284.

After the court was convened, defendants filed a motion to dismiss the complaint or for summary judgment. Plaintiff then filed a motion, which was allowed, to supplement its complaint to allege (1) that effective July 1, 1968, and August 1, 1968, the United States Department of Agriculture promulgated Federal Order No. 36 which totally and completely preempted Pennsylvania's right to fix wholesale and/or minimum or maximun retail prices of milk in the area where plaintiff operates, and that the purported action of the Pennsylvania Milk Marketing Board which attempts to fix wholesale and/or retail milk prices is unconstitutional; and (2) that Pennsylvania, in setting retail prices for milk which are in excess of prices paid for milk in Ohio and West Virginia where there are no minimum retail prices fixed, results in a situation where out-of-state dealers have no economic incentive to ship milk into Pennsylvania because they cannot compete, and, therefore, there is a burden on interstate commerce. After defendants' motion to dismiss or for summary judgment was denied, defendants filed an answer in which they denied various allegations of unconstitutionality related to General Order No. A–687.

At the evidentiary hearing, the parties presented evidence with respect to the reasonableness of the method used to arrive at minimum retail resale prices, an issue not raised in the pleadings. In addition, evidence was also received with

3. Now known as the "Milk Marketing Law."

4. May 6, 1968.

5. The device used by plaintiff was the sale of milk through a cooperative enterprise in which the profits are distributed to the consumers, thereby enabling them to buy milk at less than the Commission mandated minimum.

6. The complaint includes other allegations and requests for temporary and permanent injunctive relief with respect to sanctions which can be imposed under the Act. These matters are directly related to the validity of General Order No. A–687 and the Commission has voluntarily stayed its hand with respect to sanctions pending the disposition of this and other proceedings.

respect to other Commission general orders which have superseded General Order No. A–687 in establishing milk prices.

Prior to the hearing, some 37 firms engaged in the processing and distribution of milk products in the Commonwealth of Pennsylvania moved for leave to intervene as parties defendants. This motion was denied, but leave was granted the firms which had moved to intervene to file briefs as amici curiae. After hearing, and upon consideration of the briefs and proposed findings of fact and conclusions of law submitted by the parties, the court finds and concludes as follows:

1. The plaintiff is United Dairy Farms Cooperative Association, a cooperative organized under the laws of the Commonwealth of Pennsylvania.

2. Defendants are Milk Marketing Board of the Commonwealth of Pennsylvania, J. Lin Huber and Mary T. Denman, Chairman and Member of the Board, an administrative agency created by the Milk Marketing Act No. 294, July 31, 1968, amending the Milk Control Law, Act of April 28, 1937, P.L. 417, and J. Shane Creamer, Attorney General, Commonwealth of Pennsylvania.

3. Section 401 of the Pennsylvania Milk Control Law requires all milk dealers such as United Dairy Farmers Cooperative Association must have milk dealers' licenses in order to buy, sell or otherwise handle milk pursuant thereto.

4. The plaintiff is primarily engaged in the retail sale of milk in the Pittsburgh Milk Marketing Area, Milk Marketing Area No. 2, as designated by the Pennsylvania Milk Control Commission and its successor, Pennsylvania Milk Marketing Board.

5. Plaintiff has a processing plant and 24 retail stores selling milk directly to consumers.

6. Prior to November 15, 1967, and up to April 30, 1968, the plaintiff was a licensed milk dealer under Pennsylvania Milk Control Commission, but said license expired April 30, 1968.

7. Prior to April 30, 1968, and within the time prescribed by the Pennsylvania Milk Control Commission, plaintiff applied for the renewal of its milk dealer's license for the period May 1, 1968, to and including April 30, 1969.

8. On May 4, 1968, the Pennsylvania Milk Control Commission, now the Pennsylvania Milk Marketing Board, issued a citation on the plaintiff to show cause why the Commission should not refuse to grant plaintiff a milk dealer's license citing a violation of Section 807 of the Milk Control Law and Pennsylvania Milk Control Commission General Order No. A–687, during the period November 15, 1967, to February 29, 1968, by giving rebates on the sale of Class I fluid milk.

9. Since November 15, 1967, and continuing until the present time, the plaintiff has continuously returned to consumers purchasing Class I fluid milk at plaintiff's stores 15 cents per gallon and 8 cents per half gallon, and later 15 percent of the retail price of said fluid milk.

10. These payments of 15 cents per gallon and 8 cents per half gallon or 15 percent were paid to the consumer of Class I fluid milk by presentation on the part of the consumers of a cash register tape slip at the several stores of the plaintiff.

11. No ownership of stock, scripts, bond or any other security or membership in the plaintiff cooperative association was necessary in order to receive such cash rebate or refund.

12. The amount of the cash refund was based upon and deducted from the prevailing retail out-of-store price established by Official General Orders of the Pennsylvania Milk Control Commission and Pennsylvania Milk Marketing Board, being Official General Orders Nos. A–687 and A–746.

13. The plaintiff has not appeared at any price hearings held by the Pennsylvania Milk Marketing Board in connection with the issuance of Official General Orders Nos. A–687 and A–746, appli-

cable to these proceedings, nor has it petitioned for a hearing to amend, change or revise resale prices in Milk Marketing Area No. 2 since the issuance of the aforesaid Official General Orders.

■ 14. The refund or distribution by plaintiff to its customers deducted from the established retail price of Class I fluid milk, amounted to a rebate in violation of Section 807 of the Pennsylvania Milk Control Act, and Section 807 of the Pennsylvania Milk Marketing Law, and Pennsylvania Milk Control Commission Official General Order No. A–687 and Pennsylvania Milk Marketing Board Official General Order No. A–746.

15. Since April 30, 1968, the plaintiff has operated its business under a temporary license issued pending the outcome of this litigation.

16. Since the issuance of Official General Orders Nos. A–687 and A–746 of the Pennsylvania Milk Marketing Board, the plaintiff has increased its number of retail stores in the Pittsburgh Milk Marketing Area, Area No. 2.

■ 17. Plaintiff has an adequate remedy at law under the provisions of the Pennsylvania Milk Control Law and the Pennsylvania Milk Marketing Law, specifically Sections 801, 901 and 902 thereof.

18. The aforesaid Pittsburgh Milk Marketing Area, Area No. 2, lies within the area covered by Federal Marketing Order No. 36, promulgated by the Secretary of Agriculture under the provisions of the Federal Agricultural Agreement Act of 1937, as amended.

19. Under the provisions of the Federal Agricultural Marketing Agreement Act of 1937, the Secretary of Agriculture is empowered to establish producer prices, (prices to be paid by handlers of milk to producers (farmers) of fluid milk), and said Act specifically precludes the Secretary from establishing minimum prices for milk at the resale (wholesale and retail) level.

■ 20. The Pennsylvania Milk Marketing Board (and its predecessor, Commission) was established by the Pennsylvania State Legislature for the purpose of maintaining and providing regulation and control of the milk industry in the Commonwealth to prevent unfettered competition for the protection of the public health and welfare and for the prevention of fraud, and to that effect the Act requires the Milk Marketing Board to establish producer and resale minimum prices for fluid milk and cream, fresh, sour or storage, skimmed milk, flavored milk or milk drink, buttermilk, ice cream mix, condensed or concentrated, whole or skim milk, and, further provides for steps which the Milk Marketing Board must follow in setting minimum producer and resale prices.

21. The Pennsylvania Milk Marketing Law and its predecessor Act, specifically provides for the holding of price hearings in the several milk marketing areas, established by the Board, to determine minimum producer and resale prices so as to allow a fair and reasonable return to dealers and producers alike.

22. There have been some changes in the milk industry since the original Pennsylvania Milk Control Law was enacted, but the basic principles upon which the Milk Control Law rests remain unchanged.

23. The Pennsylvania Milk Marketing Act further provides that the Board, in reaching a fair return to milk producers, dealers and handlers, must do so by utilizing a cross-section representative of the average or normally efficient producer, dealer or handler in the respective areas, and shall consider the cost of containers according to size and type.

24. The Pennsylvania Milk Marketing Act provides for a schedule of bonds to be filed by milk dealers and handlers for protection of the producers dealing with such dealers or handlers.

25. The Pennsylvania Milk Marketing Board, in making its determination

of minimum resale prices by the use of a cross-section of the reasonably efficient dealers or handlers in a given milk marketing area, uses the records submitted by dealers and handlers located in the area who are licensed by the Board. This information is submitted to the Board on forms required to be filed by such licensees and is utilized by the Board after audit made by the Board.

26. In determining the foregoing cross-section, the Pennsylvania Milk Marketing Board generally does not use all of the dealers and handlers in a given milk marketing area, but utilizes the records and information filed with them by selected dealers or handlers determined by the Board to be "full service" dealers or handlers, i. e. those dealers or handlers who engage in all of the phases of sale at wholesale or retail of fluid milk, i. e. sale to stores, home delivery, sales to schools, institutions, restaurants and hospitals.

27. The pricing structure is not arbitrary, capricious or unreasonable.

28. The plaintiff is engaged primarily in the retail sale of milk in stores only. The plaintiff is not a full service milk dealer in that it does not engage in home delivery nor deliver milk to hospitals, schools and other institutions.

29. Retail sales of milk out of stores represents less than fifty percent of the retail sales of milk in the Commonwealth of Pennsylvania, home delivery, and delivery to schools, hospitals, restaurants and similar institutions and vending machines, together represent in excess of fifty percent of retail sales of milk in Pennsylvania.

30. The criteria for establishing Class I and II prices under Federal Order No. 36 differs markedly from the criteria required to be used by the Pennsylvania Milk Marketing Board. Under the Federal Milk Marketing Order, producer Class I and II prices are related to a parity concept basis and the net effect is that the prices reflect supply-demand conditions, while the Milk Marketing Board in fixing such prices must not

only consider supply-demand conditions but it also is required to fix prices at levels which will give a reasonable return to a cross-section of the average and reasonably efficient milk producer, dealer and handler.

31. The plaintiff is not in any way harmed by the establishment of retail out-of-store prices promulgated by the Official General Orders applicable to its marketing area since all retail sales of milk by licensees in this same area are required to sell at the same minimum levels.

32. The producer Class I and II prices established by Official General Orders of the Pennsylvania Milk Marketing Board currently in force in the Pittsburgh Milk Marketing Area, Area No. 2, are higher than producer prices established under Federal Order No. 36, applicable to the same handlers purchasing from producers in that area, and, therefore, the effective producer minimum Class I and II prices in this area are those established by Official General Orders of the Pennsylvania Milk Marketing Board.

33. The Pennsylvania Milk Marketing Board has continuously enforced and continues to enforce minimum producer and resale prices in the Pittsburgh Milk Marketing Area, Area No. 2.

34. The existence of a Federal Marketing Order relating to producer prices in the area in which the plaintiff is engaged in the retail sale of fluid milk, does not preempt the jurisdiction of the Pennsylvania Milk Marketing Board to set minimum producer and resale prices in the same area inasmuch as there is no conflict or impossibility of dual compliance between the Federal and the State regulatory bodies.

35. The establishment of minimum producer and resale prices set forth in the Milk Control Law and its successor, the Milk Marketing Law, is not a deprivation of the property of the plaintiff without "due process of law," nor is it repugnant to the fourteenth amendment of the Constitution of the

United States of America or any of the other provisions of the Constitution, but is a matter of legislative determination as to whether or not these controls are deemed necessary in accordance with the proper police powers of the State of Pennsylvania.

36. Plaintiff, by use of the so-called "profit-dividend," is, in fact, attempting to circumvent the provisions of the Pennsylvania Milk Marketing Law by giving a discount or rebate in violation of properly promulgated Official General Orders of the Milk Marketing Board.

37. There is no credible evidence that plaintiff has paid the so-called "profit-dividend" from profits of the co-operative in accordance with the Agricultural Cooperative Act of 1887.

38. The plaintiff introduced no books or records to indicate whether the dividends paid consumers were earned on milk sales or other products which it sold through its stores.

39. The imposition of minimum retail price controls on milk does not prevent the importation of milk into Pennsylvania from other states and these price controls have only an incidental effect on and do not burden interstate commerce.

 The plaintiff has not established that there is a substantial question that the Pennsylvania Milk Marketing Law, or its predecessor, the Pennsylvania Milk Control Law, constitutes a violation of the fourteenth amendment to the United States Constitution, or that Pennsylvania lacks authority, pursuant to the exercise of its police power, to provide for minimum consumer resale prices. On the contrary, we find that the establishment of minimum resale prices represents a permissible exercise of the police power of Pennsylvania, and is constitutional. Cf. Mayo v. Lakeland Highlands Canning Co., 1940, 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774; Nebbia v. New York, 1934, 291 U.S. 502, 54 S. Ct. 505, 78 L.Ed. 940; Milk Control Board of Pennsylvania v. Eisenberg Farm Products, 1939, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752; Sylvan Seal Milk, Inc. v. Milk Control Commission, E.D.Pa.1967, 270 F.Supp. 117; Milk Control Commission v. Battista, 1964, 413 Pa. 652, 198 A.2d 840, appeal dismissed, 1964, 379 U.S. 3, 85 S.Ct. 75, 13 L.Ed.2d 22; Milk Control Commission v. Lily-Penn Food Stores, Inc., 1969, 434 Pa. 189, 253 A.2d 630. Neither has plaintiff established that there is a substantial constitutional question as to the validity of the method used to arrive at minimum prices. The method is not arbitrary, capricious or unreasonable. Cf. Sylvan Seal Milk, Inc. v. Milk Control Commission, E.D.Pa.1967, 264 F.Supp. 1001. The plaintiff has not established that retail price controls on milk prevents the free importation of milk into Pennsylvania, and, at most, the price controls do not burden but have only an incidental effect on interstate commerce which would not prevent Pennsylvania from pursuing its legitimate goals. Plaintiff has produced only two out-of-state producers which it claims do not ship milk into Pennsylvania and one of these does not do business in Western Pennsylvania. The Pennsylvania controls do not have as their goal the regulation of commerce almost wholly interstate in character, but rather are aimed primarily at the regulation of prices among Pennsylvania's dealers inter se. See Milk Control Board of Pennsylvania v. Eisenberg Farm Products, supra. Finally, the question of preemption is without merit. Federal Order No. 36 was issued pursuant to the Federal Agricultural Marketing Agreement Act of 1937, as amended. The Act specifically excludes the Secretary of Agriculture from establishing minimum prices for milk at the resale (wholesale and retail) level. While Federal Order No. 36 and the Pennsylvania Milk Marketing Board Orders fix minimum prices which the dealers or handlers must pay to producers, the minimum prices fixed by the Board are higher than those fixed by the Federal Order, and there is no impossibility of dual compliance. Each can operate without conflict. There is no

indication that Congress has intended to preempt this field, and this conclusion cannot be drawn from the nature of the regulated subject matter. County Board of Arlington County, Va. v. State Milk Commission, 1954, 346 U.S. 932, 74 S.Ct. 374, 98 L.Ed. 337; Florida Lime & Avocado Growers, Inc. v. Paul, 1963, 373 U.S. 132, 929, 83 S.Ct. 1210, 10 L.Ed.2d 248; Parker v. Brown, 1943, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315.

The action will be dismissed.