Argued and submitted April 14, affirmed in part; reversed in part, and remanded November 23, 1983

MEDO-BEL CREAMERY, INC.,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(119,219, CA A24687 (control))

SUNSHINE DAIRY, INC.,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(120,187, CA A24688)

STANDARD DAIRY, INC.,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,554, CA A24689)

EBERHARD CREAMERY, INC.,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,555, CA A24690)

KILGORE'S DAIRY CO.,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,614, CA A24692)

KLAMATH FALLS CREAMERY, INC.,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,615, CA A24691)

FISH, dba Echo Spring Dairy,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,629, CA A24693)

FRED MEYER, INC.,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,630, CA A24694)

CARNATION COMPANY,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,631, CA A24695)

ALPENROSE DAIRY, INC.,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,632, CA A24696)

CARNATION COMPANY,
*Appellant,*

*v.*

STATE OF OREGON, by and through
KUNZMAN et al,
*Respondents.*

(121,655, CA A24697)
(Cases Consolidated.)

673 P2d 537

Jeffrey M. Batchelor, Portland, argued the cause for appellants. With him on the briefs were Spears, Lubersky, Campbell & Bledsoe, Edwin A. Harnden, Benson, Arenz, Lucas, Davis & Hay, and Hugh E. Gallagher, Portland.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondents. With her on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This appeal involves 11 separate actions brought by various milk handlers challenging the State of Oregon's practice, through its Department of Agriculture (state), of fixing a minimum price that must be charged by milk producers higher than the minimum price set by the United States Department of Agriculture (USDA). The circuit court dismissed all 11 actions on the grounds of *res judicata* and failure to allege a justiciable controversy.

Plaintiffs are, for the purpose of this appeal, divided into three groups. The first group ("A"), consisting only of Medo-Bel Creamery, Inc., had filed a previous action in federal court and did not there allege a third-party beneficiary contract claim or make a claim for monetary damages. The second group ("B"), consisting of Klamath Falls Creamery, Inc., and Echo Spring Dairy, filed only the present actions in state court; they alleged third-party beneficiary status and sought both declaratory relief and monetary damages. The third group ("C") consists of all other plaintiffs who had previously filed actions in federal court that were dismissed. The federal court dismissed the claims (of plaintiffs "A" and "C") for declaratory and injunctive relief on the ground of mootness, and the claims of plaintiffs "C" for monetary damages because of the proscription of the Eleventh Amendment to the federal constitution.[1] There was no appeal; instead, these actions were commenced in the state court.

Plaintiffs "C" appeal the dismissal of their complaints by the circuit court on the basis of *res judicata*. Plaintiffs "A" and plaintiffs "B" appeal the dismissal of their actions for lack of a justiciable controversy.

The state concedes that the trial court erred in dismissing plaintiffs "C"'s claims for monetary damages on the basis of *res judicata*. The federal court dismissed those plaintiffs' claims, because, under the Eleventh Amendment, the court lacked jurisdiction. That determination has nothing

---

[1] The Eleventh Amendment to the United States Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

to do with the merits of a claim in the state court. Accordingly, the trial court erred in dismissing plaintiffs "C" 's complaints on that ground.

■   The trial court properly applied *res judicata* in dismissing plaintiffs "A" 's and "C" 's actions for declaratory and injunctive relief. The federal court dismissed the actions, because it held that no action or controversy existed as required by Article III, section 2, to the United States Constitution because the claims were moot. In their complaints in federal court, plaintiffs "A" and "C" alleged that, subsequent to February 26, 1976, "the state defendants have ceased and desisted from such erroneous and illegal over-order pricing." Although no such allegation is contained in the complaints in state court, plaintiffs "A" and "C" are bound, under the doctrine of *res judicata,* by the federal court's determination that their claims for injunctive relief are moot. We affirm the trial court's dismissal of that portion of each of those plaintiffs' claims.

There remains the issue of whether a justiciable controversy was presented by any plaintiffs on matters that were not properly dismissed on the basis of *res judicata.* Although each plaintiff filed a separate complaint, many of them are identical and, even if all of the complaints are considered together, they allege only claims for injunctive relief and four separate causes of action for monetary damages: (1) breach of an agreement between the state and the USDA with respect to which each plaintiff claims to be a third-party beneficiary;[2] (2) violation of due process and equal protection guarantees of the state and federal constitutions; (3) interference with interstate commerce in violation of the Commerce Clause of the federal constitution, and (4) federal preemption of milk price controls.

The cause of action for breach of a cooperative agreement between the state and the USDA, is premised on the plaintiffs' being third-party beneficiaries of that contract, which was attached as an exhibit to the complaints. That agreement provides, so far as relevant, that the USDA shall:

"* * * * *

---

[2] As noted above, Medo-Bel does not allege that it is a third-party beneficiary of the agreement.

"(a)   Advise and consult with the OREGON AGENCY on any proposed amendments or modifications in Federal program policies, activities or regulatory terms of concern or importance to the OREGON AGENCY, which might affect the administration or enforcement of the program carried *[sic]*.

"(b)   Subject to conditions of Section 10(i) of Public Act No. 10, Seventy-Third Congress, as amended and as reenacted and amended by the Agricultural Marketing Agreement Act of 1937, as amended, make available, or render, to the OREGON AGENCY information, reports or data on a periodic basis (monthly or as otherwise agreed by the Federal Market Administrator and the State's Milk Stabilization Division Administrator) relative to the following:

"(1)   Volume, butterfat and utilization of Oregon produced milk and

"(2)   Volume, butterfat and utilization of milk disposed of through licensed Oregon handlers but produced elsewhere, and

"(3)   Volume, butterfat and utilization of interplant deliveries of milk, and

"(4)   Prices and values determined to be payable to producers pursuant to the provisions of Order No. 124 * * *.

"(d)   Remit and deliver to the OREGON AGENCY, as provided in Section 1124.82 of Order No. 124, the producer monetary proceeds due producers participating in the 'Oregon Quota Plan,' as provided for in Oregon Revised Statutes Chapter 583.

"(e)   Recognize and allow the OREGON AGENCY to select and provide by regulation the basis for verification of 'Oregon Quota Plan' producers' payments as to butterfat content, subject, however, to the Federal Market Administrator's determination that handlers have fully accounted for milk receipts at the classified prices provided by the Federal order.

"* * * * *."

The agreement further provides that the state shall:

"* * * * *

"(a)   Advise and consult with the FEDERAL AGENCY on any proposed amendments or modifications in State of Oregon program policies, activities or regulatory terms of concern or importance to the FEDERAL AGENCY, which

might affect the administration or enforcement of the program carried out by said FEDERAL AGENCY.

"(b)   If provided by administrative regulation of the OREGON AGENCY, remit directly to producers (or to their cooperative association) participating in the 'Oregon Quota Plan,' the total proceeds available under such plan.

"(c)   Make available, or render, to the FEDERAL AGENCY information, reports or data, on a periodic basis (monthly or as otherwise agreed by the Federal Market Administrator and the State's Milk Stabilization Division Administrator) relative to the following:

"(1)   Prices and values determined to be payable to producers pursuant to the provisions of Oregon Revised Statutes Chapter 583 in the Oregon market pool and under the 'Oregon Quota Plan,' and * * *

"* * * * *

"(4)   Amounts of fees assessed and withheld from producers, and amounts of any other sums withheld from such producer * * *.

"(f)   Assess and collect from the producers participating in the 'Oregon Quota Plan,' fees established by its regulations pursuant to the provisions of Oregon Revised Statutes 583.004, 583.046 and 583.510(3) and utilize such funds for the statutory purposes set forth therein.

"* * * * *."

■   Nothing in the agreement prohibits the state from setting higher prices for milk than those set under the federal pricing procedure. Plaintiffs appear to contend that the agreement does so limit the state, because it is subject to section 602 of the Agricultural Marketing Agreement Act, which provides in part:

"  'It is hereby declared to be the policy of Congress —

"  '(1)   Through the exercise of the powers conferred upon the Secretary of Agriculture under this title, to establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish, as the prices to farmers, parity prices as defined by section 301(a)(1) of the Agricultural Adjustment Act of 1938 [7 USCS § 1301(a)].

"  '(2)   To protect the interest of the consumer by * * * (b) *authorizing no action* under this title *which has for its purpose the maintenance of prices to farmers above the level*

*which it is declared to be the policy of Congress to establish* in subsection (1) of this section.' " (Emphasis supplied.)

Even if, as alleged by plaintiffs, the provisions of that act are deemed to be a part of the contract entered into between the USDA and the state, its constraints are on the USDA, not on the state. Nothing in the act prohibits a state from fixing prices higher than those set by the USDA, but the USDA is not authorized to take any action the purpose of which is to maintain prices to farmers higher than those established by the USDA. A reading of the contract, taken together with all of the allegations in the complaints, fails to establish that the purpose of the contract is in any way to limit the state's authority to set higher prices for milk than those set by the USDA. Therefore, even if plaintiffs can establish that they are third-party beneficiaries of the contract, they have not alleged facts showing that the contract was breached by the state's fixing a higher minimum price to be paid for milk than that set by the USDA. Plaintiffs have failed to state a cause of action for breach of contract, even if they are third-party beneficiaries of that contract.

■      Plaintiffs' remaining causes of action are for violation of due process and equal protection rights under the federal and state constitutions, interference with interstate commerce in violation of the federal constitution, and federal preemption of milk pricing. Each of those causes of action involve injury to rights independent of a contract.

ORS 12.110(1) provides:

"An action for assault, battery, false imprisonment *or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter,* shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit." (Emphasis supplied.)

ORS 30.287(8) provides:

"Except as provided in ORS 12.120 and 12.135, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employe or agent of a public body

within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

Under either statute, plaintiffs' remaining causes of action, which are not based on contract, are subject to a two-year statute of limitations. Plaintiffs' complaints allege that the last overcharge for milk on which they base their claim for monetary damages occurred in September, 1975. The present actions were commenced during the months of April through August, 1980, nearly five years later. Accordingly, plaintiffs' causes of action for money damages, which are not based on contract, are barred by the statute of limitations.[3]

■ The only remaining claims in the case are plaintiffs "B" 's claims for injunctive relief based on alleged violations of their due process and equal protection rights under the federal and state constitutions and on federal preemption of milk pricing.[4] The state argues that those claims must be dismissed because no "justiciable controversy" exists. ORS 28.050 states that a declaratory judgment action can be brought "in any proceedings * * * in which a judgment or decree will terminate the controversy or remove an uncertainty." Plaintiffs allege that since January 1, 1970, they have been forced by the state to pay a higher price for milk than other similarly situated persons. The statutes and regulations by which the state claims authority to require plaintiffs to pay higher prices are still in effect. Nothing is pled that indicates that the controversy has been resolved or that the state will not or cannot in the future require plaintiffs to pay higher prices for milk. We conclude that the cases involve a "controversy" and an "uncertainty" as to the parties' rights and that there is a justiciable controversy.

■ The United States Supreme Court in *Florida Avocado Growers v. Paul,* 373 US 132, 83 S Ct 1210, 10 L Ed 2d 248 (1963), set forth the standards by which a court must determine whether federal legislation preempts state action. The Supreme Court stated that a determination of preemption

---

[3] The state has also argued that it is protected from plaintiffs' claims for monetary damages by sovereign immunity. Because of our disposition of the cases, we need not address that issue.

[4] As we held above, plaintiffs "A" 's and plaintiffs "C" 's claims for injunctive relief are barred by *res judicata.*

"* * * depends upon whether the state regulation 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " 373 US at 141.

The Court went on:

"* * * The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives.

"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakeably so ordained. * * *" 373 US at 142.

The federal statutes that plaintiffs claim have preempted the field of milk pricing are the Agricultural Marketing Agreement Act of 1937, 7 USC § 601-74, *as amended,* in conjunction with the Agricultural Adjustment Act of 1938, 7 USC § 1301-93, *as amended,* and the Price Support of Agricultural Commodities Act, 7 USC § 1421-49, *as amended.* A review of those statutes reveals that their policy is to insure an adequate supply of milk within the United States by protecting the farmers who produce milk. The declared policy of Congress in enacting 7 USC § 602 is:

"[t]o establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish, as the prices to farmers, parity prices as defined by section 1301(a)(1) of this title."

The preamble also states that it is the policy to protect the interests of the consumer, but only in two ways: first, by a gradual increase of the prices to producers to maintain an adequate supply and, second,

"* * * authorizing no action under this chapter which has for its purpose the maintenance of prices to farmers above the level which it is declared to be the policy of Congress to establish in subsection (1) of this section." 7 USC § 602(2).

Other provisions indicate that a policy of the statute is to establish uniform prices for all milk delivered, regardless of the use made of such milk. 7 USC § 608c(5)(B)(ii). Further, 7

USC 608c(5)(F) provides that cooperative marketing associations shall be allowed:

> "*Provided,* That it shall not sell milk or its products to any handler for use or consumption in any market at prices less than the prices fixed pursuant to paragraph (A) of this subsection for such milk."

Nothing in the statutes relied on specifically or impliedly bars state action in setting minimum prices that are higher than those set under the federal statute. The purposes of the federal statutory scheme of establishing milk prices that are high enough to support producers and to continue a uniform flow of milk would not be adversely affected by state action in setting prices higher than those set by the federal government. There is no impossibility of dual compliance with the federal and state regulatory bodies.

We therefore hold that Congress did not intend to preempt the field of setting milk prices. The states are preempted only from setting milk prices lower than those established by the federal government. The challenged action in this case, the state's setting minimum prices higher than those of the federal government, is not preempted by the federal statutes. Our conclusion is consistent with the few cases that have decided the issue in other jurisidictions. *United Dairy Farm. Coop. Ass'n v. Milk Con. Com'n of Pa.* 335 F Supp 1008 (DC Pa 1971); *Schwegmann Bros. G.S. Mkts v. Louisiana Milk Com'n,* 200 So2d 37 (La App 1967); *In Re E.J. McGovern Dairy Products, Inc.,* 31 NJ 601, 158 A2d 689 (1960); *Brookwood Farms v. Milk Marketing Board,* 304 A2d 510 (8 Pa Cmwlth Ct 511, 304 A2d 510 (1973). We affirm the circuit court's dismissal of the preemption claim.

■ Although it is not a model of clarity, we interpret plaintiffs' complaints to allege due process and equal protection violations of the state by the state's actions in treating them differently from other similarly situated milk handlers. Plaintiffs have alleged adequately their cause of action for violation of due process and equal protection rights.

The state's argument in the trial court in support of its motion to dismiss the claims for declaratory and injunctive relief for alleged violations of plaintiffs "B" 's due process and equal protection rights was based on the lack of a justiciable controversy, discussed above. The legal sufficiency of those

claims on other grounds was not addressed below, and we decline to address those issues for the first time on appeal.

In summary, the circuit court's order to dismiss the complaints of plaintiffs "A" (Medo-Bel Creamery, Inc.) and plaintiffs "C" (Sunshine Dairy, Inc., Standard Dairy, Inc., Eberhard Creamery, Inc., Kilgore's Dairy Co., Fred Meyer, Inc., Carnation Company, and Alpenrose Dairy, Inc.) is affirmed. The order dismissing the complaints of plaintiffs "B" (Klamath Falls Creamery, Inc., and Echo Spring Dairy) are reversed insofar as they relate to the complaint for declaratory and injunctive relief based on claims of equal protection and due process. Dismissal of the remainder of plaintiffs "B" 's complaints is affirmed.

Affirmed in part; reversed in part, and remanded.